**CROWELL & MORING LLP**
Justin D. Kingsolver (AZ Bar No. 035476)
JKingsolver@crowell.com
Jeffrey Poston (*pro hac vice* forthcoming)
JPoston@crowell.com
Andrew G. Pruitt (*pro hac vice* forthcoming)
APruitt@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5116

*Attorney for Plaintiffs True Names, Ltd. and Virgil Griffith*

**CROWELL & MORING LLP**
Warrington S. Parker, III (*pro hac vice* forthcoming)
WParker@crowell.com
Jacob Canter (*pro hac vice* forthcoming)
JCanter@crowell.com
Katie Lee (*pro hac vice* forthcoming)
KatLee@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Fax: (415) 986-2827

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| True Names, Ltd. d/b/a Ethereum Name Service, a Singapore corporation, and Virgil Griffith, an individual.<br><br>Plaintiffs,<br>v.<br>GoDaddy, Inc., a Delaware corporation; GoDaddy.com LLC, a Delaware corporation; Dynadot LLC, a California corporation; and Manifold Finance, Inc., a Delaware corporation.<br><br>Defendants. | Case No. ___<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

Plaintiffs True Names, Ltd. d/b/a Ethereum Name Service ("TNL") and Virgil Griffith (collectively "Plaintiffs") respectfully move this Court pursuant to Fed. R. Civ. P. 65 and Local Rule 65.1 for:

(1) a temporary restraining order enjoining Defendants GoDaddy, Inc. and GoDaddy.com LLC (collectively "GoDaddy"), its officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with it, from directly or indirectly

causing the expiration of the eth[.]link domain name (the "Domain") or allowing the Domain to revert to the registry to be generally available for purchase by third parties;

(2) a temporary restraining order enjoining Defendants GoDaddy from preventing or frustrating Plaintiffs' right, pursuant to the Domain Name Registration Agreement with GoDaddy, to renew the registration of the Domain;

(3) a temporary restraining order enjoining Defendants GoDaddy, Dynadot LLC, and Manifold Finance, Inc. (collectively "Defendants"), their officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with them from selling or otherwise transferring ownership interest in the Domain to any party, or purchasing or accepting ownership interest in the Domain; and

(4) an order to show cause why a preliminary injunction should not issue, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from directly or indirectly committing the above-described acts during the pendency of this action.

## FACTUAL BACKGROUND

### A. Plaintiffs' Domain Registration.

Launched in 2017, TNL provides the software for the Ethereum Name Service, which is a decentralized, open-source domain name system that revolutionized the cryptocurrency market by allowing users to trade currency using short-form, human-readable language instead of the long strings of alphanumeric characters typically associated with cryptocurrency wallets, making it easier and more accessible to exchange cryptocurrencies. (Declaration of Khori Whittaker ("Whittaker Decl.") ¶ 3) Important to the operation of ENS is the eth[.]link domain name, which acts as a gateway between the traditional Domain Name System (DNS), which matches IP addresses with website domain names, and the ENS system. (*Id*. ¶ 4) Today, over 2 million ENS names have been registered worldwide, all of which can rely on the eth[.]link domain. (*Id*. ¶ 5)

The software for the ENS system is owned by Plaintiff TNL. (*Id*. ¶ 3). TNL makes money through a small yearly fee of $5 that persons or entities registered to participate in the ENS system pay. (*Id*. ¶ 6) Plaintiff TNL is also the beneficial registrant of the

eth[.]link domain name and Plaintiff Griffith is the registrant. (*Id*. ¶¶ 8-11) In 2018, Plaintiff Griffith registered eth[.]link for and on behalf of TNL through a company called Uniregistry. (*Id*.) In 2020, Defendant GoDaddy acquired Uniregistry. (*Id*. ¶ 9)

Both the Uniregistry agreement and GoDaddy agreement provide for automatic renewal of the eth[.]link domain. (Declaration of Alexander Urbelis ("Urbelis Decl.") ¶¶ 12 (Ex. A, ¶ 2.12), 14 (Ex. B, ¶ 3(b))). Further, TNL has the right to manually renew the eth[.]link domain registration pursuant to the parties' Domain Name Registration Agreement. (*Id*.)

### B. Defendants Provide Inconsistent Information Regarding the Domain Registration Status, and Refuse to Communicate with Plaintiffs.

On July 31, 2022, Plaintiff Griffith received a notification of the registration's expiration—but the same notice informed him that he could renew the registration. (***Id***. ¶ 8, Ex. G). However, as of August 3, 2022, the Whois data reflected that the domain was re-registered for another year, to July 26, 2023. (*Id*. ¶ 19 (Ex. C)). As the registrar of record, only GoDaddy could have caused the expiration date to reflect that the domain was re-registered for another year, to July 26, 2023. (*Id*. ¶ 20).

In order to understand the status of the domain registration, counsel for Plaintiffs wrote two emails to Defendant GoDaddy on August 3, 2022. (*Id*. ¶¶ 3-4 (Ex. 4). But he received no response. (***Id***. ¶ 7)

On August 25, 2022, GoDaddy announced in a public statement that the eth[.]link domain name had "expired" on July 26, 2022, and was "currently progressing through the standard expiry lifecycle." (Whittaker Decl. ¶ 12 (Ex. E)) GoDaddy's bare-bones announcement further noted that the eth[.]link domain was "expected to return to the registry" on September 5, 2022—that is, be available for purchase by the general public—"absent a renewal by the current registrant." (*Id*.)

GoDaddy failed to offer any basis or rationale for its sudden about-face, or for its failure to automatically renew the eth[.]link domain consistent with the parties' Agreement and its practice in prior years. By arbitrarily allowing the eth[.]link domain

to expire and returning it to the registry for potential purchase by the general public, not only does GoDaddy interfere with TNL's rights and interests in the domain name and its continuing business operations, but further risks opening up the ENS system to potential infiltration by malicious third parties who might seek to access to and exploit the sensitive personal and financial data of the network's million-plus members. (*Id*. ¶¶ 16-19)

### C.   Plaintiffs Seek to Renew Their Registration.

Upon learning of GoDaddy's announcement, representatives for TNL and Griffith contacted GoDaddy to seek clarification about the supposed expiration of the eth[.]link domain and to attempt to renew the current registration, consistent with GoDaddy's announcement. (Urbelis Decl. ¶ 6 (Ex. F)) To date, however, GoDaddy has failed to respond. (Urbelis Decl. ¶ 7) GoDaddy's refusal to even respond to any of Plaintiffs' requests, much less to provide information about why and how the domain suddenly expired, has frustrated Plaintiffs' efforts to manually renew the eth[.]link domain. (*Id*.)

### D.   Defendant Sell and Purchase the Registration Before their Own September 5, 2022 Deadline.

Then, on September 3, 2022, notwithstanding its own public announcement that the domain name would be returned to the registry on September 5, 2022, GoDaddy purportedly sold the eth[.]link domain to Dynadot LLC, an online auction holder. (Whittaker Decl. ¶¶ 14-15) On the same day, Dynadot conduct a sale-via-auction and supposedly resold the eth[.]link domain to Manifold Finance, Inc. (*Id*. ¶¶ 12-13). Manifold Finance announced on September 3, 2022, on its Twitter handle @foldfinance that it had secured the registration rights to the eth[.]link domain. (*Id*.) In order for this to have occurred, GoDaddy would have had to impermissibly transfer the eth[.]link domain to Dynadot before September 5, 2022. (*Id*. ¶ 14)

By refusing the automatically renew the eth[.]link domain name and instead permitting it to expire without basis or prior warning, and by refusing to allow representatives for TNL to manually renew the registration, GoDaddy has breached the parties' domain name registration agreement.

Further, GoDaddy's refusal to even respond to TNL, much less the steps it has taken to actively conceal its conduct and frustrate TNL's ability to manually renew the registration that TNL has a right to renew, constitute a breach of the duty of good faith and fair dealing. Finally, by interfering with and disrupting TNL's relationships with millions of users who rely on its ENS system and eth[.]link domain name for secure cryptocurrency transactions, and by placing the eth[.]link domain up for auction and purporting to sell and transfer it to multiple third parties, all Defendants have intentionally interfered with TNL's prospective economic advantage and engaged in unfair and anticompetitive business practices, which could result in substantial economic and reputational damage to Plaintiffs.

### E. Plaintiffs Will Be Irreparably Injured.

Without access or rights to the eth[.]link domain name, users of the eth[.]link domain will be deprived of its use. (*Id*. ¶ 16) Plaintiffs will immediately lose customers that they cannot regain. (*Id*. ¶ 17) Furthermore, customers pay Plaintiff TNL $5 a year for use of the ENS domains. (*Id*. ¶ 6) Plaintiff TNL will face potential liabilities for those customers as TNL cannot provide the complete access for which the users paid and expect. (*Id*. ¶ 17)

Users that use the eth[.]link domain to prop up their own websites will lose access to these websites. (*Id*. ¶ 18). Those who sell products on these websites will lose their source of income if the domain is lost. (*Id*.) Others who transact cryptocurrencies with the domain may have their transactions interrupted—and because these transactions are on the blockchain, they will not be able to be retrieved, and the value of the transaction will be lost. (*Id*. ¶ 19)

Reputationally, eth[.]link is associated with TNL by and through ENS, which is intimately associated with the eth[.]link domain name. (*Id*. ¶¶ 20, 22) As a result, Plaintiffs will not only lose users, but will be severely impeded in gaining new customers, even were Plaintiffs able to secure an entirely new, but different, domain gateway. (*Id*.)

Lastly, because the domain registration may be transferred to third parties, there

is no way to ensure that persons currently using the eth[.]link domain name will be secure from cyberattack or malicious users. (*Id.* 21)

## LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). However, a TRO's requirements are less rigid since a TRO's duration is much shorter than a preliminary injunction. *L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981).

To obtain a TRO, plaintiff must demonstrate that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities" tips in its favor, and (4) an "injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).

In certain cases, a TRO may be issued where there are "serious questions going to the merits" and the hardship balance tips sharply toward the plaintiff, assuming the other elements are met. *Alliance for the Wild Rockies*, 632 F.3d at 1132. Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (internal citations omitted).

This Court may issue a TRO without notice to Defendants if (1) an affidavit or verified complaint demonstrates that Plaintiffs will suffer "immediate and irreparable loss, injury, or damage" if an injunction does not issue before the adverse party can be heard or (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1); L.R. Civ. 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

A district court has broad discretion to issue a TRO. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 n. 8 (9th Cir. 2001).

## ARGUMENT

This Court's intervention is necessary to protect TNL's rights and interests in the eth[.]link domain and to block Defendant GoDaddy from improperly depriving TNL of its ability to access and control the eth[.]link domain to which it is a beneficial registrant. A TRO is further necessary to enjoin the improper and unlawful effort to transfer ownership in the eth[.]link domain to Defendants Dynadot and Manifold Finance, which would cause immediate and irreparable harm both to TNL and to the millions of users who rely on this service for secure cryptocurrency and blockchain transactions, and potentially open the door to infiltration by malicious actors.

### I. TRUE NAMES IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS AGAINST DEFENDANTS.

Plaintiff is entitled to injunctive relief if it shows a likelihood of success on the merits of any one of its claims. Indeed, Plaintiffs can show that they are likely to prevail on each of its claims for relief.

#### A. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs will succeed on their claim again Defendant GoDaddy for breach of contract and breach of the covenant of good faith and fair dealing. As the evidence and supporting declarations show, TNL and GoDaddy's relationship is governed by the parties' Domain Name Registration Agreements (Urbelis Decl. ¶¶ 12 (Ex. A), 14 (Ex. B)) Under the Agreement, the eth[.]link domain name is subject to automatic renewal, and TNL has the right to manually renew the registration in any event. (*Id*. ¶¶ 12 (Ex. A ¶ 12.2); 14 (Ex. B ¶ 3(b)))

Defendant GoDaddy breached the express terms of the Agreement by failing to automatically renew the domain name's registration, notwithstanding the express terms of the Agreement providing for automatic renewal of the registration. (*Id*.) Plaintiffs will

succeed on their breach of contract claim. *See Varrato v. Specialized Loan Servicing LLC*, No. CV-22-00324-PHX-MTL, 2022 WL 845194 (D. Ariz. Mar. 22, 2022) (granting TRO where plaintiffs sought to enjoin Defendant from conducting a trustee's sale on their home); *Highway Techs., Inc. v. Porter*, 2009 WL 1835114 (D. Ariz. June 26, 2009).

Furthermore, the Domain Registration Agreements provided for renewal—either automatically, or manually. (*Id*.) Indeed, as Exhibit D and F reflect, the GoDaddy Defendants were called on to renew. (*Id*. ¶¶ 4 (Ex. D), 5 (Ex. F) Yet, the GoDaddy Defendants failed and refused to provide the mechanism for renewal. (*Id*. ¶ 7) This is a classic instance of a breach of a covenant of good faith and fair dealing. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986) ("The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship"); *Arizona v. Tohono O'odham Nation*, 944 F. Supp. 2d 748, 768 (D. Ariz. 2013) ("The covenant acts to prevent a party from doing something that, while not specifically prohibited by a contract, prevents the other party from enjoying benefits they reasonably expected to flow from the contract.").

### B.   Intentional Interference with Prospective Economic Advantage

Plaintiffs are also likely to prevail on their claim for intentional interference with prospective economic advantage. In Arizona, a claim for tortious interference with prospective economic advantage requires: "1. The existence of valid contractual relationship or business expectancy; 2. knowledge of the relationship or expectancy on the part of the interferor; 3. intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4. resultant damage to the party whose relationship or expectancy has been disrupted." *Miller v. Servicemaster by Rees*, 174 Ariz. 518, 521 (Ct. App. 1992). Historically, Plaintiffs have allowed its users to use the domain eth.link. (Whittaker Decl. ¶ 6) Defendants know that Plaintiffs have these relationships and that Plaintiffs renew these relationships on a yearly basis. Despite knowing this, Defendants refuse to provide a mechanism by which Plaintiffs can renew

the eth.link domain registration. Unless immediately restrained by the Court, Defendants' conduct will cause irreparable harm to Plaintiffs, which has no adequate remedy of law.

### C. Unfair Competition

Plaintiffs are also likely to prevail on their claim for unfair competition. The tort of unfair competition is premised on equitable principles "to prevent business conduct that is 'contrary to honest practice in industrial or commercial matters.'" *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 124 (Ct. App. 1998) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). The law of unfair competition prevents "all instances of fraudulent interference with another business." *Bank of Ariz. v. Ariz. Cent. Bank*, 40 Ariz. 320, 325 (1932). In 2018, Plaintiffs entered into the Agreement with the GoDaddy Defendants regarding the domain eth[.]link. (Whittaker Decl. ¶ 8) Now, the GoDaddy Defendants have put the domain up for sale despite not having a right to sell it. (*Id*. ¶¶ 12-15) On September 3, 2022, the same day that Defendant Dynodot placed the domain up for auction, Defendant Manifold Finance, Inc. purchased the domain and publicized the transaction. (*Id*.)

Defendants' unfair competitive practices have frustrated Plaintiffs' attempts to participate in the commercial market, have caused Plaintiffs substantial reputational damage, have deprived Plaintiffs of their property, and have caused substantial damage. Unless immediately enjoined, Defendants will continue to fraudulently interfere with the terms and spirit of the Agreement.

### II. TNL AND ITS USERS STAND TO SUFFER IRREPARABLE HARM IF THE DOMAIN IS ALLOWED TO EXPIRE OR ITS OPERATION INTERRUPTED.

In the absence of a TRO or injunction, TNL and ENS domain users stand to suffer substantial, immediate, and irreparable harm. Without access or rights to the eth[.]link domain name, users who have purchased over 2 million ENS domain names will be deprived of its use. (*Id*. ¶ 16) Users that prop up websites with the domain will lose a source of income when the website is lost. (*Id*. ¶ 18) And users that transact in

cryptocurrency will lose access to ongoing transactions which are not recoverable. (*Id*. ¶ 19)

This disruption in service would immediately and irreparably affect the ability users to securely use the eth[.]link domain for commerce. (*Id*.) By allowing the domain name to expire, or even by stripping TNL's ownership interest and suddenly transferring it to third parties, Defendants would immediately and irreparably harm TNL "reputation and standing with customers and prospective customers." *Zoom Video Comms., Inc. v. RingCentral, Inc.*, 2021 WL 1176700, at *4 (N.D. Cal. Mar. 29, 2021); (Whittaker Decl. ¶ 18). This loss of thousands of customers, loss of goodwill, and harm to TNL's reputation across the industry would be sufficiently "difficult to valuate" to constitute irreparable harm. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (Whittaker Decl. ¶¶ 20, 22-23). As a result, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

Further, sudden expiration of the domain would also potentially open the door to a malicious or hostile actor filling the void, which would place at risk the sensitive personal financial data of potentially millions of eth[.]link's accounts. (Whittaker Decl. ¶ 19) TNL and its representatives have made efforts to notify GoDaddy of the imminent harm and loss that will result if the service is allowed to expire, yet to date GoDaddy has refused to even respond to repeated messages. (Urbelis Decl. ¶¶ 2-7)

### III.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF A TEMPORARY RESTRAINING ORDER.

The balance of equities and the public interest heavily favor Plaintiffs here. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The temporary restraining order is limited in scope. It does nothing more than preserve the status quo and ensure that the Defendants do not take steps contrary to the Agreement or TNL's ownership interests in

the domain. Indeed, courts have found that the public "has a strong interest in holding private parties to their agreements." *See Epic Games v. Apple Inc.*, 2020 WL 5073937, at *4 (N.D. Cal. Aug. 24, 2020). Further, Defendants will not face any legitimate harm due to the requested relief, which seeks only to prevent Defendants from unilaterally and improperly interfering with TNL's existing rights and interests in the eth[.]link domain. Moreover, a TRO or injunction would prevent potentially significant issues that could arise if the domain name were opened up to bad actors seeking to capitalize on the transfer of sensitive personal financial data of millions of cryptocurrency accounts.

Absent an injunction from this Court, TNL might forever lose its control and ownership interest in the eth[.]link domain. (Whittaker Decl. ¶ 16) In short, preserving the status quo during the pendency of this action is the most equitable outcome.

## CONCLUSION

Plaintiffs are at risk of immediate and irreparable harm from Defendants. The Court should grant Plaintiffs' motions for a temporary restraining order and order to show cause. The Court should grant these requests *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to grant effective relief on the merits of Plaintiffs' claims.

For the foregoing reasons, Plaintiffs respectfully request that the Court issue:

(1) a temporary restraining order enjoining Defendants GoDaddy from directly or indirectly causing the expiration of the Domain or allowing the Domain to revert to the registry to be generally available for purchase by third parties;

(2) a temporary restraining order enjoining Defendants GoDaddy from preventing or frustrating Plaintiffs' right, pursuant to the Domain Name Registration Agreement with GoDaddy, to renew the registration of the Domain;

(3) a temporary restraining order enjoining all Defendants from selling or otherwise transferring ownership interest in the Domain to any party, or otherwise purchasing or accepting any ownership interest in the Domain; and

(4) an order to show cause why a preliminary injunction should not issue, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from directly or indirectly committing the above-described acts during the pendency of this action.

Dated: September 5, 2022

Respectfully submitted,

/s/ Justin D. Kingsolver
Justin D. Kingsolver (AZ Bar No. 035476)
Jeffrey Poston (*pro hac vice* forthcoming)
Andrew G. Pruitt (*pro hac vice* forthcoming)
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 624-2500
Fax: (202) 628-5116
JKingsolver@crowell.com
JPoston@crowell.com
APruitt@crowell.com

CROWELL & MORING LLP
Warrington S. Parker, III (*pro hac vice* forthcoming)
Jacob Canter (*pro hac vice* forthcoming)
Katie Lee (*pro hac vice* forthcoming)
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Fax: (415) 986-2827
WParker@crowell.com
JCanter@crowell.com
KatLee@crowell.com

*Attorney for Plaintiffs True Name, Ltd. and Virgil Griffith*