**CROWELL & MORING LLP**
Justin D. Kingsolver (AZ Bar No. 035476)
JKingsolver@crowell.com
Alexander Urbelis (*pro hac vice*)
AUrbelis@crowell.com
Andrew G. Pruitt (*pro hac vice*)
APruitt@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5116

**CROWELL & MORING LLP**
Warrington S. Parker, III (*pro hac vice*)
WParker@crowell.com
Jacob Canter (*pro hac vice*)
JCanter@crowell.com
Katie Lee (*pro hac vice*)
KatLee@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Fax: (415) 986-2827

*Attorneys for True Names, Ltd. and Virgil Griffith*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| True Names, Ltd. d/b/a Ethereum Name Service, a Singapore corporation, and Virgil Griffith, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GoDaddy, Inc., a Delaware corporation, GoDaddy.com LLC, a Delaware corporation, Dynadot LLC, a California corporation, and Manifold Finance, Inc., a Delaware corporation<br><br>Defendants. | Case No. 2:22-cv-01494-JJT<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL FOR**<br><br>**(I) BREACH OF CONTRACT;**<br><br>**(II) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(III) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br><br>**(IV) UNFAIR COMPETITION;**<br><br>**(V) CONVERSION** |

## INTRODUCTION

1. This case arises from GoDaddy's breach of its agreement to respect, acknowledge, and protect the duly registered and extremely valuable eth.link domain name. The eth.link domain, which facilitates hundreds of thousands of cryptocurrency transactions by thousands of users, is registered with GoDaddy until July 26, 2023. But GoDaddy unilaterally and willfully announced to eth.link owners that the eth.link domain's registration with GoDaddy had expired and that absent any further action by the

current registrant, the eth.link domain would revert to the registry, that is be available to others, on September 5, 2022.

2. While taking this step was wrong, worse, GoDaddy did not even abide by its own notice. Rather than wait until September 5, 2022, GoDaddy purportedly either sold or transferred possession and control of the domain name eth.link to Dynadot LLC on September 3, 2022, without notice to Plaintiffs. In so doing, GoDaddy has deprived Plaintiff True Names Ltd. of its livelihood. The sale will disable a valuable cryptocurrency network and recklessly risk making it available to scores of malicious actors. And the domain name is now purportedly and wrongfully held by Manifold Finance, Inc.

3. Eth.link transformed the cryptocurrency market by making it as accessible to users as the internet is today. When the internet was in its infancy, browsing on the internet suffered from major complications. One complication was this: domain names and internet protocol addresses were not in sync. Today, one can type in google.com (a domain name) and navigate directly to that website. But that was not always the case. Instead, in the early days of the internet, one would need to type in a full IP address, which is a string of numbers that look something like this: 12.453.223.678. An innovative computer scientist, however, developed the Domain Name System (DNS). The DNS matches IP addresses with domain names allowing internet users to "surf" the web using names like NFL.com, without resorting to a string of numbers.

4. The Ethereum Name Service (ENS) performs the same function as DNS but for cryptocurrency addresses, specifically for transactions involving the cryptocurrency Ethereum. Started in 2017, one using ENS can transact business using a human readable followed by eth, such as vitalik.eth. Prior to ENS, one had to know and type in a wallet address, like 0xd8da6bf26964af9d7eed9e03e53415d37aa96045.

5. The eth.link service acts as a gateway between the traditional 'DNS' namespace and the ENS system. Users with ENS names can host content on them that is accessible to anyone with a web browser by simply appending .link to their name: for example, vitalik.eth.link.

6. ENS has been well-received in the cryptocurrency industry. Over 2 million ENS names have been registered worldwide.

7. Now this is all under threat. GoDaddy, with whom Plaintiffs registered the eth.link domain name, issued a statement on August 25, 2022, that the eth.link domain name had "expired" and "was expected to return to the registry," on September 5, 2022, meaning that it would be generally available for purchase by third parties, "absent a renewal by the current registrant." GoDaddy issued this statement despite the fact that the evidence reflects that the domain name does not expire until July 26, 2023. Also, GoDaddy's Domain Name Registration Agreement provides that Plaintiffs have the right to renew the registration, but Defendants have frustrated that attempt by refusing to respond to multiple requests by representatives of the current registrant to renew.

8. Because of GoDaddy's refusal to even entertain outreach on behalf of True Names, Ltd. and the current registrant, attempts to contact GoDaddy since its August 25, 2022, statement have been unavailing.

9. Even worse, it appears that GoDaddy has taken actions inconsistent with its own public statements. Notwithstanding its announcement that the domain would be returned to the registry on September 5, 2022, on September 3, 2022, Manifold Finance, Inc. publicly announced that it won the registration rights to eth.link in an auction run by Dynadot LLC, an online auction holder. In order for this to be true, at some date before September 5, 2022, GoDaddy would have had to impermissibly transfer possession and control of the domain over to Dynadot.

### THE PARTIES

10. Plaintiff True Names Ltd. d/b/a Ethereum Name Service is a non-profit company registered in Singapore. It developed the Ethereum Name Service (ENS) and is responsible for its continuing operations.

11. Plaintiff Virgil Griffith is an individual who registered the ENS domain name eth.link for and on behalf of True Names Ltd. His domicile for purposes of Federal Rule 17(b) is White Deer, Pennsylvania.

12. Defendant GoDaddy, Inc., is a Delaware company with its principal place of business in Tempe, Arizona. According to its 10-K dated February 2021, GoDaddy provides, among other things, a domain registration service.

13. Defendant GoDaddy.com LLC is a subsidiary of GoDaddy, Inc. It is registered in Delaware with its principal place of business in Tempe, Arizona. Based on information and belief, it is the entity that manages the registration of domain names.

14. Defendant Dynadot LLC is a California company with its principal place of business in San Mateo, California. Dynadot is a domain name registrar and web hosting service.

15. Defendant Manifold Finance, Inc. is a Delaware company residing in Delaware. The website https://manifoldfinance.com states that the company participants in the decentralized finance ("DeFi") market.

## JURISDICTION

16. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Defendants GoDaddy, Inc. and GoDaddy.com LLC (collectively, "GoDaddy") are registered in Delaware with their principal place of business in Arizona. Defendant Dynadot is a California company with its principal place of business in San Mateo, California. Defendant Manifold Finance is a Delaware company. Plaintiffs are a non-profit registered in Singapore, and a person domiciled in Pennsylvania. Further, the amount in controversy exceeds $75,000.

## VENUE

17. Venue is proper in the District of Arizona pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because it is the judicial district in which the defendants have their principal place of business and/or in which the events or omission giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

18. In 2017, True Names, Ltd. decided to do for cryptocurrency transactions that which Domain Name System did for everyday users of the internet. The Domain Name System is a means to use understandable domain names to browse the internet. No

longer was an internet user required to remember a string of numbers associated with an IP address.

19. Thus, True Names, Ltd. created the Ethereum Name Service (ENS). This service allowed users to trade and exchange cryptocurrency using natural names and language. No longer are users required to remember long random alphanumeric strings that are associated with a cryptocurrency wallet.

20. A key factor in making this system widely available is providing a 'gateway' to facilitate the use of ENS through ordinary web browsers.

21. To do so, in 2018, Plaintiff Virgil Griffith, for and on behalf of True Names Ltd., registered the domain name eth.link with a company called Uniregistry. Based on information and belief, the agreement then at issue can be found at https://web.archive.org/web/20180508234623/https:/uniregistry.com/legal/registration-agreement. The Uniregistry agreement provided for automatic renewals of registrations. *See* **Exhibit A,** Section 2.12 ("… all new Uniregistry accounts have default settings with automatic renewal enabled").

22. In 2020, GoDaddy, Inc. acquired Uniregistry. GoDaddy.com LLC, a subsidiary of GoDaddy, Inc. also has registration agreement. A copy of one last revised April 5, 2022, can be found at https://www.godaddy.com/legal/agreements/domain-name-registration-agreement. *See* **Exhibit B**. It too provides for automatic renewals. *Id*. at Section 3(B) ("Automatic Renewal is the default setting.").

23. Both the Uniregistry agreement and the GoDaddy agreement provided Plaintiff True Names Ltd. the right to use the eth.link domain name.

24. Since 2018, as reflected in information gathered and obtained by Whois.com (which tracks registrations) the eth.link domain name has been renewed. *See* **Exhibit C**.

25. On July 31, 2022, Plaintiff Griffith received a notice that the eth.link domain registration had expired. The same notice provided that there was an ability to renew the domain name. *See* **Exhibit G**.

26. Then on August 3, 2022, Whois.com reflects that the eth.link domain was re-registered on or about July 26, 2022 with an expiration date of July 26, 2023. *See* **Exhibit C**.

27. Counsel for Plaintiffs contacted GoDaddy twice on August 3, 2022, to discuss manual renewal of the domain eth.link. GoDaddy did not answer Plaintiffs' email. *See* **Exhibit D**.

28. On August 25, 2022, Defendant GoDaddy.com LLC publicly announced on its website that the domain registration for eth.link "expired" on July 26, 2022. It also stated that the domain would "be returned to the registry on Sept. 5, 2022, absent a renewal by the current registrant." GoDaddy's statement is available at https://aboutus.godaddy.net/newsroom/company-news/news-details/2022/GoDaddy-Statement-on-eth.link-Domain-Registration/default.aspx. *See* **Exhibit E**.

29. When a domain goes back to the registry, it is available for use by any person that registers that domain. In other words, Plaintiffs would no longer have use of that domain. Furthermore, existing users of the domain, including over 1 million of Plaintiffs' customers, could and would find their use utterly disrupted rendering them unable to use that domain to facilitate cryptocurrency transactions.

30. On September 1, 2022, counsel for Plaintiffs again wrote to GoDaddy to address the issue of the eth.link domain registration status, including detailing the efforts taken on behalf of True Names Ltd. and Mr. Griffith to manually renew the domain registration. In a letter addressed to the legal department of Defendant GoDaddy.com LLC, counsel noted that Plaintiffs wished to renew the registration and had tried various methods to contact Defendant and resolved the issue to no avail. *See* **Exhibit F**.

31. In addition to noting the efforts to avoid having the eth.link domain name returned to the registry, counsel noted the harm to the 2 million ENS addresses that can rely on the eth.link domain name.

32. Counsel for Plaintiffs received no response from GoDaddy.

33. Rather than provide any response, on information and belief, on September 3, 2022, GoDaddy conducted a sale of the eth.link domain name. Dynadot, an online

auction holder, purported to have purchased or to have taken possession and control of the domain from GoDaddy. This sale took place two days prior to the September 5, 2022 date that the GoDaddy Defendants represented would be the date on which the eth.link domain name would be returned to the registry.

34. Then, on the same day it allegedly bought the domain, Dynadot conducted a sale-via-auction of the eth.link domain name. The purported purchaser of the eth.link domain name from Dyandot is Defendant Manifold Finance.

35. Based on information and belief, the transfer of ownership of the eth.link domain name has not yet taken place.

36. Nonetheless, Manifold Finance has made public representations that it has secured ownership interest in the eth.link domain.

37. As a result, Plaintiffs have filed this action and seek immediately injunctive relief as well as any attendant damages.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract as to GoDaddy Defendants)

38. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 37 above and incorporate them by reference.

39. In 2018, Plaintiff Virgil Griffith registered the domain name eth.link for and on behalf of True Names Ltd. subject to the terms of Domain Name Registration Agreement. ("Agreement"). A copy of the Agreement last revised April 5, 2022, can be found at the following link https://www.godaddy.com/legal/agreements/domain-name-registration-agreement. *See* **Exhibit B**.

40. That Agreement provided for automatic renewal, which Plaintiffs understood happened on or around July 26, 2022.

41. Even were there no automatic renewal, Plaintiffs have a right under the terms of the Agreement to manually renew a registration.

42. Defendants have failed to automatically renew the registration and have refused to allow manual renewal in violation of the terms of the Agreement.

43. Plaintiffs have performed all of their obligations under the parties' contractual agreement.

44. Accordingly, Plaintiffs are entitled to damages incurred in an amount to be proven at trial, but that exceeds $75,000.

45. Furthermore, Defendants' conduct unless enjoined and restrained by the Court will cause irreparable harm to Plaintiffs, which has no adequate remedy of law. Therefore, Plaintiffs are entitled to a preliminary and permanent injunction.

## SECOND CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing as to GoDaddy Defendants)

46. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 45 above and incorporate them by reference.

47. The Agreement provides for two different ways by which a registration can be renewed. One is automatic. The other is manual.

48. Defendants have refused or failed to renew Plaintiffs' registrations automatically.

49. Moreover, despite various attempts to contact Defendants for the purpose of manually renewing, all attempts to manually renew have been rebuffed.

50. Defendants' failure to respond to Plaintiffs' attempts to renew the registration have frustrated the entirety of the Agreement as Defendants now wish to deprive Plaintiffs of a domain registration that by Agreement, and by express admission in Defendants' public announcement, Plaintiffs have a right to renew.

51. Accordingly, Plaintiffs are entitled to damages incurred in an amount to be proven at trial, but that exceeds $75,000.

52. Furthermore, Defendants' conduct unless enjoined and restrained by the Court will cause irreparable harm to Plaintiffs, which has no adequate remedy of law. Therefore, Plaintiffs are entitled to a preliminary and permanent injunction.

## THIRD CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage as to All Defendants)**

53. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 52 above and incorporate them by reference.

54. Plaintiffs allow the use of the domain to its users in exchange for a yearly fee.

55. Defendants know that Plaintiffs have these relationships and know that Plaintiffs have renewed these relationships on a yearly basis.

56. Despite knowing this, Defendants refuse, without reason and for the purpose of injuring Plaintiffs, to provide a mechanism by which Plaintiffs can renew its eth.link domain registration.

57. Accordingly, Plaintiffs are entitled to damages incurred in an amount to be proven at trial, but that exceeds $75,000.

58. As Defendants' conduct was guided by an intent to injure Plaintiffs and improve their own economic opportunities, and as their actions were willful, fraudulent, and malicious, Plaintiffs are also entitled to punitive damages.

59. Furthermore, Defendants' conduct unless enjoined and restrained by the Court will cause irreparable harm to Plaintiffs, which has no adequate remedy of law. Therefore, Plaintiffs are entitled to a preliminary and permanent injunction.

60. As a result of Defendants' conduct, Plaintiffs are entitled to punitive damages.

## FOURTH CLAIM FOR RELIEF
**(Unfair Competition as to All Defendants)**

61. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1-60 above and incorporate them by reference.

62. Plaintiffs entered into a business transaction with the GoDaddy Defendants through the Agreement.

63. The GoDaddy Defendants took actions contrary to the honest practice in industrial or commercial matters when they refused to allow the domain to automatically renew and also when they refused to engage in good faith communications with Plaintiffs when Plaintiffs attempted to manually renew.

64. The GoDaddy Defendants took further actions contrary to the honest practice in industrial or commercial matters when they put up the domain for sale by another, creating the false representation that they had the right to sell the domain to another despite not having that right.

65. Defendant Dynodot took actions contrary to the honest practice in industrial or commercial matters when it placed the domain eth.link up for auction on September 3, 2022, despite the fact that GoDaddy had posted a notice that the domain would not be returned to the registry until September 5, 2022.

66. Defendant Manifold Finance took actions contrary to the honest practice in industrial or commercial matters when it purchased the domain eth.link from the Dynadot auction on September 3, 2022, despite the fact that GoDaddy had posted a notice that the domain would not be returned to the registry until September 5, 2022.

67. Defendant Manifold Finance took further actions contrary to the honest practice in industrial or commercial matters when it publicized on September 3, 2022, that it was the new owner of the domain, despite the fact that GoDaddy had posted a notice that the domain would not be returned to the registry until September 5, 2022.

68. Defendants' unfair competitive practices have frustrated Plaintiffs' attempts to participate in the commercial market, have caused Plaintiffs substantial reputational damage, have deprived Plaintiffs of their property, and have caused substantial damage.

69. Accordingly, Plaintiffs are entitled to damages incurred in an amount to be proven at trial, but that exceeds $75,000.

70. As Defendants' actions were aggravated and outrageous and as the actions were willful, fraudulent, and malicious, and were done with the intent to injure Plaintiffs and improve their own economic opportunities, Plaintiffs are also entitled to an award of punitive damages.

71. Furthermore, Defendants' conduct unless enjoined and restrained by the Court will cause irreparable harm to Plaintiffs, which has no adequate remedy of law. Therefore, Plaintiffs are entitled to a preliminary and permanent injunction.

### FIFTH CLAIM FOR RELIEF
**(Conversion as to All Defendants)**

72. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1-71 above and incorporate them by reference.

73. Plaintiffs held an ownership interest in the domain name eth.link. This ownership interest granted them the right to control the domain name.

74. Despite this, Defendants intentionally exercised dominion and control over the domain name eth.link and interfered with Plaintiffs' rights thereto.

75. The GoDaddy Defendants did not act in good faith when exercising dominion and control over the domain name eth.link because they knew that Plaintiffs were entitled to control that domain name. The GoDaddy Defendants also intended to assert rights over that domain name that were inconsistent with Plaintiffs' right of control, including by selling that domain name to others. The GoDaddy Defendants substantially interfered with Plaintiffs' rights over the domain name eth.link by taking it from Plaintiffs authorizing the sale of that domain name to others. The GoDaddy Defendants' dominion and control over the domain name eth.link has caused Plaintiffs substantial inconvenience and expense. This and related conduct constitutes conversion of Plaintiffs' property.

76. Defendant Dynadot did not act in good faith when exercising dominion and control over the domain name eth.link because it knew that Plaintiff was entitled to control that domain name. Defendant Dynadot also intended to assert rights over the domain name eth.link that were inconsistent with Plaintiffs' right of control, including by selling that domain name to others. Defendant Dynadot's dominion and control over the domain name eth.link has caused Plaintiffs substantial inconvenience and expense. This and related conduct constitutes conversion of Plaintiffs' property.

77. Defendant Manifold Finance did not act in good faith when exercising dominion and control over the domain name eth.link because it knew that Plaintiff was

entitled to control that domain name. Defendant Manifold Finance substantially interfered with Plaintiffs' rights over the domain name eth.link by purchasing it from others. Defendant Manifold Finance's dominion and control over that domain name has caused Plaintiffs substantial inconvenience and expense This and related conduct constitutes conversion of Plaintiffs' property.

78. Accordingly, Plaintiffs are entitled to damages incurred in an amount to be proven at trial, but that exceeds $75,000

79. As Defendants' actions in converting Plaintiffs' property were willful, fraudulent, malicious, and done with the intent to injure Plaintiffs and improve their own economic opportunities, Plaintiffs are also entitled to an award of punitive damages.

80. Furthermore, Defendants' conduct unless enjoined and restrained by the Court will cause irreparable harm to Plaintiffs, which has no adequate remedy of law. Therefore, Plaintiffs are entitled to a preliminary and permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. Entry of judgment in favor of Plaintiffs against Defendants;

B. An order awarding Plaintiffs damages in an amount to be proven at trial, but in an amount no less than $75,000;

C. Prejudgment and post-judgment interest;

D. An order awarding Plaintiffs its costs and attorneys' fees to the extent allowed by law;

E. A temporary restraining order enjoining Defendants GoDaddy, Inc. and GoDaddy.com LLC, its officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with it, from directly or indirectly allowing the eth.link domain name to expire and/or revert to the domain name registry to be generally available for purchase by third parties;

F. A temporary restraining order enjoining Defendants GoDaddy, Inc. and GoDaddy.com LLC from preventing or frustrating Plaintiffs' right, pursuant to

GoDaddy's Domain Name Registration Agreement, to renew the registration of the Domain;

G. A temporary restraining order enjoining Defendants GoDaddy, Inc., GoDaddy.com LLC, Dynadot, and Manifold Finance, Inc., their officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with it (collectively "Defendants") from selling or otherwise transferring any ownership interest in the eth.link domain name, or purchasing any ownership interest in the domain, or otherwise accepting transfer of any ownership interest in the domain;

H. An order to show cause why a preliminary injunction should not issue, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from directly or indirectly committing the above-described acts during the pendency of this action; and

I. All such further and additional relief, in law or equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

Plaintiffs demand a jury trial.

| | |
|---|---|
| Dated: September 21, 2022 | CROWELL & MORING LLP<br><br>By: */s/ Justin Kingsolver*<br>Justin D. Kingsolver (AZ Bar No. 035476)<br>Alexander Urbelis (*pro hac vice*)<br>Andrew Pruitt (*pro hac vice*)<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC  20004<br>Telephone: (202) 624-2500<br>Fax: (202) 628-5116<br>JKingsolver@crowell.com<br>AUrbelis@crowell.com<br>APruitt@crowell.com<br><br>CROWELL & MORING LLP<br>Warrington S. Parker, III (*pro hac vice*)<br>Jacob Canter (*pro hac vice*)<br>Katie Lee (*pro hac vice*)<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 986-2800<br>Fax: (415) 986-2827<br>WParker@crowell.com<br>JCanter@crowell.com<br>KatLee@crowell.com |