LEWIS ROCA ROTHGERBER CHRISTIE LLP
John C. Gray (Bar No. 028454)
Alexander R. LaCroix (Bar No. 030166)
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone:   (602) 262-5311
Facsimile:   (602) 262-5747
Email:   jgray@lewisroca.com
         alacroix@lewisroca.com

*Counsel for Defendant*
*Manifold Finance, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| True Names, Ltd. *et al.*, | Case No. 2:22-cv-01494-JJT |
|---|---|
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION OF DEFENDANT MANIFOLD FINANCE, INC. TO DISMISS FIRST AMENDED COMPLAINT AND TO VACATE PRELIMINARY INJUNCTION FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| GoDaddy, Inc. *et al.*, | |
| Defendants. | |
| | (Assigned to the Hon. John J. Tuchi) |

119542869.1

Defendant Manifold Finance, Inc. ("Manifold") submits the following reply in support of its motion to dismiss the First Amended Complaint and to vacate the previously entered preliminary injunction for lack of personal jurisdiction (the "Motion") [Dkt. 37].

## I.  Introduction

As explained in the Motion, Manifold has no relevant connection to Arizona. Accordingly, it is not subject to general or specific personal jurisdiction in Arizona, the Court must dismiss Manifold from this action, and the previously entered injunction (the "Injunction") [Dkt. 19] must be vacated.

In response, plaintiffs True Names, Ltd. and Virgil Griffith ("Plaintiffs") attempt to salvage their claims against Manifold, but their Opposition repeatedly misrepresents (or badly misunderstands) their own allegations and the relevant facts and law. Therefore, and because Plaintiffs have not met their burden to establish this Court's jurisdiction over Manifold. the Motion should be granted in its entirety.

## II.  Plaintiffs' Arguments

### A.  *Office Depot* and *Jenkins*

Plaintiffs' first argument regarding jurisdiction is that "[c]ourts have already determined the issue of personal jurisdiction under the circumstances of this case" because Manifold "subjected itself to Arizona jurisdiction because the eth.link domain name's registry and registrar, the GoDaddy defendants, are located in Arizona." (*Id.* at 1:5-1:12 (citing *Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 778 (N.D. Cal. 2007); *Jenkins v. Pooke*, 2009 WL 10692010, at *4-6 (N.D. Cal. July 13, 2009)).)  Plaintiffs' assertion,

1  however, is plainly false, as neither *Office Depot* nor *Jenkins* has anything to do with the

2  "circumstances of this case," and Plaintiffs' description of the facts here is erroneous.

### a)  *Office Depot*

First, Plaintiffs' parenthetical citation of *Office Depot* indicates that the Court in that case found "in rem jurisdiction at the location of the domain name's registry or registrar." (*Id.* at 1:9-1:10.)  That citation involves an egregious misreading of *Office Depot*.  In fact, *Office Depot* is not even a jurisdictional case.

In that case, Office Depot had obtained a judgment against Zuccarini in the Central District of California.  *Office Depot*, 621 F.Supp.2d at 774.  Office Depot then assigned its judgment rights to DS Holdings, which sought a writ of execution and appointment of a receiver in the Northern District of California to aid in the turnover of certain internet domain names owned by Zuccarini.  *Id.* at 774-75.  In response, Zuccarini argued that the Northern District was not the appropriate venue for levying on the domain-name assets, ***not as a matter of personal jurisdiction*** but as a statutory question under California Code of Civil Procedure section 699.510(a), which provides that a writ of execution is to be sought "in the county where the levy is to be made."  *Id.* at 775-76.[1]

In determining where Zuccarini's intangible domain names were "located" for purposes of the California statute, the Court looked to the Anti-cybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d), which provides for "*in rem* jurisdiction over domain names, in certain circumstances, 'in the judicial district in which

---

[1] Zuccarini also argued that the Eastern District of Pennsylvania retained "Federal Jurisdiction for the ownership and use of the domain names" and had frozen Zuccarini's assets, but that is not an argument regarding personal jurisdiction.

1  the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located.'" *Id.* at 777. Again, though, the Court was not addressing a question of *in rem* or personal jurisdiction. *See generally id.* It merely looked to the ACPA as guidance in determining where the domains were located. *See id.*

Second, even if *Office Depot* had found *in rem* jurisdiction under the ACPA, that would have nothing to do with the "circumstances of this case," which is not an ACPA or *in rem* case. To be clear, 15 U.S.C. § 1125 of the ACPA is part of the broader Lanham Act regarding trademark claims. Thus, in order for a court to exercise *in rem* jurisdiction under § 1125(d)(2), a plaintiff must assert a Lanham Act claim, and the *in rem* action has to be filed against the domain itself. *See* 15 U.S.C. § 1125(d)(2)(A) ("The owner of a [trade]mark may file an ***in rem*** civil action **against a domain name** . . . .") (emphasis added). Moreover, the *in rem* action under § 1125(d)(2) is only available if "the court finds that the [trademark] owner . . . is **not able to obtain in personam jurisdiction** over a[n individual defendant or] through due diligence was not able to find a person who would have been a defendant in a civil action . . . ." *See id.* (emphasis added).

Here, however, Plaintiffs have not asserted a Lanham Act trademark claim; they do not allege that they own any valid trademark in the "eth.link" domain name (the "Domain"); they do not assert that they are unable to obtain personal jurisdiction over Manifold (in fact, they assert the exact opposite); and they have not named the Domain itself as an *in rem* defendant. (*See generally* FAC.) Accordingly, neither *Office Depot* nor the ACPA support any assertion of jurisdiction here.

Third, Plaintiffs badly confuse the relevant "registrar and registry" at issue in this case. As explained by the Court in *Office Depot*, under the "ICANN" system, a domain registry operator (or "registry") is responsible for maintaining the definitive database of a top-level domain (or "TLD"). *Office Depot*, 621 F.Supp.2d at 776. In other words, a single registry is responsible for maintaining a database of all domains using the ".com" or ".net" TLD, and, as relevant here, a single registry is responsible for maintaining a database of all domains using the ".link" TLD. *See id.* By contrast, registrars act as agents for persons or entities who want to register a second-level domain name (e.g., "example.com"). *Id.* In short, the registrars "accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants." *Id.*

Here, Plaintiffs contend that defendants GoDaddy, Inc. and GoDaddy.com LLC (collectively, "GoDaddy") constitute both the relevant "registry and registrar." (*See* Opp. 1:7.) But that, again, is false. The registry for the ".link" TLD is Nova Registry Ltd., *see* https://www.icann.org/en/registry-agreements/details/link, and Nova is a Maltese corporation with its principal place of business in Malta, *see* https://itp.cdn.icann.org/en/files/registry-agreements/link/link-assign-pdf-04-05-2022-en.pdf.[2] GoDaddy was merely the registrar that Plaintiffs chose to use in registering the Domain with Nova. (*See* FAC ¶ 7.) Further, after GoDaddy allowed the Domain's

---

[2] Manifold respectfully requests that the Court take judicial notice of these facts pursuant to Fed. R. Evid. 201(b)(2), as the information can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—namely, the ICANN website, which is the definitive source of information regarding domain registries.

1  registration to expire, GoDaddy was no longer the relevant registrar; instead, Manifold
2  utilized defendant Dynadot LLC ("Dynadot") of California as its registrar.  (*See id.* ¶ 9.)
3  In other words, even if this were an *in rem* case under the Lanham Act, the District of
4  Arizona still would not provide the appropriate jurisdiction or venue; instead, Plaintiffs
5  would need to file in Malta (the location of Nova, the relevant registry) or California (the
6  location of Dynadot, the relevant registrar).

In sum, Plaintiffs' argument regarding *Office Depot* and the ACPA is nonsense; it misrepresents the relevant law and facts; and it does nothing to meet Plaintiffs' burden of establishing this Court's jurisdiction over Manifold.

           **b)**      ***Jenkins***

Sadly, Plaintiffs' parenthetical explanation of *Jenkins* is just as misleading as its citation of *Office Depot*. Indeed, after falsely contending that *Office Depot* found "in rem jurisdiction at the location of the domain name's registry or registrar," Plaintiffs merely assert that *Jenkins* held the "same." (*See* Opp. at 1:10-1:12.) *Jenkins*, however, is not an *in rem* case either. *See Jenkins*, 2009 WL 10692010, *passim*.

Plus, *Jenkins* is an unpublished decision from 2009, well before the U.S. Supreme Court's decisions in *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014), and *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1779, 198 L.Ed.2d 395 (2017), which expressly rejected the then-prevailing California and Ninth Circuit interpretations of specific personal jurisdiction. *Compare Jenkins*, 2009 WL 10692010, at *4 ("courts have found . . . express aiming at the forum state because 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the

1  defendant knows to be a resident of the forum state'"); *with Walden*, 571 U.S. at 1124-25
2  (Ninth Circuit's "approach to the 'minimum contacts' analysis impermissibly allows a
3  plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.
4  ***Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply***
5  ***because he allegedly directed his conduct at plaintiffs whom he knew had Nevada***
6  ***connections***.") (emphasis added; citations omitted).

7        Moreover, even if *Jenkins* were good law, it would be and is easily distinguishable
8  from this case.  In *Jenkins*, the plaintiffs alleged that: defendant unlawfully accessed
9  plaintiffs' e-mail account; defendant then contacted the registrar for plaintiffs' domain and
10 asked it to change the username and password for the relevant account; and, finally, after
11 the registrar sent an automatic email to plaintiffs' e-mail account, defendant again used his
12 unlawful access to change the username and password for the domain registration account.
13 *Jenkins*, 2009 WL 10692010, at *1.  Thus, the defendant's "tortious conduct was directed
14 at California because he unlawfully accessed Plaintiffs' e-mail account," which was
15 "maintained by a California corporation headquartered in California," and his tortious
16 conduct was implicitly directed at the registry," which was also located in California.
17 *Jenkins*, 2009 WL 10692010, at *4.

18       Here, by contrast, Manifold is not alleged to have done anything in Arizona at all.
19 (*See generally* FAC.)  In fact, the only alleged connection between this case and Arizona
20 is GoDaddy, but Manifold is not alleged to have interacted in any way with GoDaddy, let
21 alone in Arizona.  (*See generally id.*)  In their Opposition, Plaintiffs add an assertion that
22 "ENS at all relevant times had users who live in Arizona and conduct business and other

1  transactions in Arizona in reliance on the eth.link domain," for which they cite Paragraph 6 of the FAC.  (*See* Opp. 2:14-2:15).  But that citation is again terribly misleading, as Paragraph 6 says nothing of the sort.  (*See* FAC ¶ 6.)  Instead, it merely says that "ENS has been well-received in the cryptocurrency industry[, and o]ver 2 million ENS names have been registered worldwide."  (*See id.*)  In other words, the FAC does not allege that ENS has any users in Arizona at all.  (*See id.*)

Accordingly, Plaintiffs' reliance on *Jenkins* is just as misplaced as their reliance on *Office Depot*, neither of which has anything to do with this case.

**B.  Express Aiming**

Apart from their inapposite citations of *Office Depot* and *Jenkins*, Plaintiffs attempt to meet the "express aiming" portion of the *Calder* "effects test" by arguing that, "as a legal matter, it is enough that Manifold's acts caused harm and impacted relationships in Arizona." (Opp. at 5:12-5:23.)[3]  But that is the exact opposite of the express-aiming test and would turn the Supreme Court's decisions in *Walden* and *Bristol-Myers* upside down. Indeed, the Supreme Court in *Walden* repeatedly and emphatically rejected the very same argument that injuries suffered in a forum state could give rise to specific jurisdiction when the defendant had never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to in that state. *See Walden*, 571 U.S. at 288-291.

Moreover, even if Plaintiffs were correct as to the appropriate test, they do not actually allege that they were harmed in Arizona.  (*See generally* FAC.)  In their

---

[3] Once more, Plaintiffs exclusively cite cases that are unpublished and/or were issued well before *Walden* and *Bristol-Myers*.  (*See id.*)

1  Opposition, Plaintiffs contend that "Manifold does not deny the allegation . . . that it was
2  aware of the agreement between Plaintiffs and GoDaddy regarding the eth.link domain
3  name." (Opp. at 6:25-6:27 (citing FAC ¶ 55).)  But this is, yet again (and inexplicably), a
4  complete fabrication, as Paragraph 55 of the FAC does not allege any agreement between
5  Plaintiffs and GoDaddy or any knowledge of that agreement. (*See* FAC ¶¶ 54-55.)  Instead,
6  Paragraph 55 alleges that Defendants knew of the relationships referenced in Paragraph
7  54—the relationships between Plaintiffs and **their own users** (i.e., the users of the eth.link
8  Domain and ENS service, not GoDaddy). (*See id.*)

9  In short, Plaintiffs once more blatantly mispresent (or badly misunderstand) their
10 own allegations and the relevant legal standards at issue here.  Accordingly, they have done
11 nothing to meet their burden of establishing jurisdiction.

12 **C.    Jurisdictional Discovery**

13 As a fallback position, Plaintiffs request "jurisdictional discovery" in an effort to
14 find facts they should have investigated *before* filing suit against Manifold.  That request
15 should be denied for the reasons set forth in Manifold's Motion. (*See* Mot. at 13-14.)

16 Moreover, Plaintiffs' proposed discovery is not narrowly tailored and far exceeds
17 any jurisdictional limitations. (*See* Opp. at 11:20-11:21.)  Indeed, Plaintiffs appear to
18 request discovery of all "documents from Manifold relating to its purchase of the eth.link
19 domain name, including pre-purchase documents relating to the purchase." (*See id.*)  But
20 that encompasses Plaintiffs' entire case against Manifold and has nothing to do with
21 Manifold's purported connections to Arizona. (*Compare id.*; *with* FAC.)  In fact, Plaintiffs
22

1  still have not asserted what conduct they believe Manifold undertook in or that was
2  expressly aimed at Arizona. (*See generally* Opp.)

3  Accordingly, there is no basis for jurisdictional discovery, and Plaintiffs' request
4  should be denied.

**D.  The Injunction**

As explained in Manifold's Motion, the Injunction must also be vacated for lack of personal jurisdiction. (*See* Mot. at 14-15.) In opposition, Plaintiffs do not explain how a court can enter an injunction against a party over whom it lacks personal jurisdiction, nor do they explain how this Court could maintain its Injunction against Manifold if it dismisses Manifold for lack of personal jurisdiction. (*See generally* Opp.) Instead, Plaintiffs merely argue that: (i) Federal Rule of Civil Procedure 60(b) is not the appropriate procedural mechanism, and (ii) Manifold waived any arguments regarding the Injunction by not challenging it in a timely manner. (*See id.* at 12-14.)

Of course, whether the Motion's references to Rule 60(b) were technically correct is irrelevant, as "the label attached to a motion does not control its substance." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000). More importantly, a void order rendered without personal jurisdiction may be attacked, even collaterally, ***at any time***, and even if a defendant has not appeared in the action. *See* Phillips & Stevenson, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-F, § 3:410. And, to the extent that the Injunction was merely interlocutory rather than final, that gives the Court even *more* leeway to correct any prior errors, not less. *See* 11 Wright & Miller, Federal Practice and Procedure, § 2852 (courts have power to modify an interlocutory

judgment or order ***at any time*** prior to final judgment); *accord Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015); *VienPhuong Ti Ho v. City of Long Beach*, 2020 WL 8617674, *8 ("[A] district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law and is not abridged by the Federal Rules of Civil Procedure.") (quoting *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).[4]

Further, Plaintiffs' argument regarding purported waiver or abandonment simply attempts to layer one due-process violation on top of another. As the Court noted in its order denying Plaintiffs' original request for a temporary restraining order ("TRO") and an order to show cause ("OSC") regarding a preliminary injunction, Plaintiffs' first attempt to contact Manifold regarding this case came on a Sunday of a holiday weekend and only via Twitter. (*See* Order of Sept. 6, 2022 [Dkt. 11], at 2:11-2:14.) The Court therefore denied the TRO and properly denied any OSC because Plaintiffs bore the burden of establishing their entitlement to an injunction. (*See id.*)

The Court, however, then went on to: (i) order that Plaintiffs provide a copy of its September 6 Order to a "verified contact" at each Defendant by September 7; (ii) order that Defendants file any response to "Plaintiffs' TRO Motion" by September 8; and (iii) set a hearing on the "TRO Motion" for September 9. (*See id.*) And, instead of a "verified contact" at Manifold, Plaintiffs simply sent a copy of the Order to Manifold's registered agent for service of process in Delaware. (*See* Canter Decl. [Dkt. 16], at ¶¶ 8-9.)

---

[4] In addition, where good cause is shown, LRCiv 7.2(g) allows motions for reconsideration to be filed more than 14 days after the challenged order.

1  Thus, Manifold—a small California corporation not subject to personal jurisdiction in Arizona—had barely 24 hours (during a holiday week) to receive the Order from Delaware, retain counsel in Arizona, and file a response to the TRO Motion. Respectfully, that was not sufficient time. Moreover, although the Order arguably gave Manifold notice that a TRO might be issued, it did not give notice of a preliminary injunction. (*See id.*) To the contrary, the September 6 Order expressly denied the portion of the TRO Motion relating to an OSC for a preliminary injunction, and it only referred to the September 9 hearing as a hearing on a "TRO Motion." (*See id.*)

Accordingly, Plaintiffs cannot rely on purported waiver or abandonment, as Manifold lacked sufficient notice before the Injunction was entered. And, in any event, Manifold could not have been required to respond to a motion in a court that lacks personal jurisdiction over it.

### III.  Conclusion

In sum, the Court lacks personal jurisdiction over Manifold; it should dismiss Manifold from this action; and it should vacate the Injunction.

Dated: December 2, 2022

Lewis Roca Rothgerber Christie LLP

By: _____
John C. Gray
Alexander R. LaCroix
*Counsel for Defendant*