Haryle Kaldis (*to be admitted pro hac vice*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Telephone: (215) 665-5559
Email:       hkaldis@cozen.com

Attorneys for Defendants
GoDaddy Inc. and GoDaddy.com, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| True Names, Ltd. d/b/a Ethereum Name Service, a Singapore corporation, and Virgil Griffith, an individual<br><br>                        Plaintiffs,<br><br>            v.<br><br>GoDaddy, Inc., a Delaware corporation, and GoDaddy.com LLC, a Delaware corporation, Dynadot LLC, a California corporation, and Manifold Finance, Inc., a Delaware corporation.<br><br>                        Defendants. | No.: 2:22-cv-01494-JJT<br><br>**DEFENDANTS GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

## I.   <u>INTRODUCTION</u>

Plaintiffs True Names, Ltd. ("True Names") and Virgil Griffith ("Griffith") (collectively, "Plaintiffs") initiated this lawsuit, including claims against Defendants GoDaddy Inc. and GoDaddy.com, LLC ("GoDaddy") (collectively, "Defendants"), after Griffith failed to timely renew the domain name registration for the eth.link domain name (the "Domain"). Griffith had registered the Domain with Uniregistry—a separate legal entity that Plaintiff alleges GoDaddy Inc. subsequently acquired—not GoDaddy or GoDaddy Inc. Thus, Griffith never registered the Domain with Defendants, and Plaintiffs sued the incorrect legal entities in this lawsuit. As a result, their claims against Defendants must be dismissed with prejudice.[1]

Even setting this aside, Plaintiffs' claims lack merit and should be dismissed. The exhibits attached to Plaintiffs' pleadings show that the registration for the Domain expired because Griffith was in federal prison at the time, and thus did not renew the registration himself. Moreover, no one acting on Griffith's behalf took any action to renew the Domain until after it expired. Even after the Domain registration expired, Plaintiffs' representatives hardly took any action to attempt to renew the registration—oddly choosing to email a single employee at GoDaddy regarding the issue, even though GoDaddy was not the registrar for the Domain. Moreover, the employee Plaintiffs emailed was a security executive responsible for handling physical and cyber security threats against GoDaddy, not domain renewals (and certainly not for another registrar). And after sending two unanswered emails to this GoDaddy employee, Plaintiffs seemingly did nothing further to attempt to renew the expired Domain registration for almost an entire month. As a result of Plaintiffs' failure to timely renew the

---

[1] The Amended Complaint does not allege that True Names registered the Domain, but rather states that "Plaintiff Virgil Griffith, for and on behalf of True Names Ltd., registered the domain name eth.link with a company called Uniregistry." Doc. 24 ¶ 24. Uniregistry's Registration and Service Agreement entered into between Griffith and Uniregistry expressly provides that "[t]his Agreement shall not be construed to create any obligation by either us or you to any non-party to this Agreement. Enforcement of this Agreement, included any provisions incorporated by reference, is a matter solely for the parties to this Agreement." Doc. 24-1 (Ex. A) § 2.18. Thus, it appears that True Names lacks standing to bring these claims, and dismissal is also appropriate on this basis.

Domain registration, and well over a month after the registration initially expired, the Domain was sold via an online auction to a third party.

Plaintiffs may be upset that their failure to timely renew the Domain led to its expiration and the sale of that Domain to a third party. That said, the exhibits Plaintiffs attached to their pleadings make clear that Plaintiffs' failure to take timely and effective action are ultimately responsible for the outcome. Plaintiffs cannot shift the blame to GoDaddy (which was not the registrar for the Domain) or GoDaddy Inc. (the sole managing member of GoDaddy's corporate grandparent) for their own failure, and cannot to allege any cognizable legal claim on this basis. Plaintiffs' Amended Complaint fails to state a claim for relief, and the Court should grant the Motion to Dismiss in its entirety.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Background on Domain Name Registration

GoDaddy is the world's largest domain name registrar, with over 84 million domain names under management. *See, e.g. Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.* (C.D. Cal. Sept. 10, 2015) Case No. CV 10-03738, 2015 WL 5311085, at *1. GoDaddy Inc. is the sole managing member of GoDaddy's corporate grandparent, and GoDaddy Inc. is not a domain name registrar. By way of background, a domain name registrar manages the reservation of Internet domain names registered through it by members of the public. *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 (9th Cir. 2013). "[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first-served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). As such, a registrar's execution of its registration function is passive: if a domain is available, then the registrar's computers automatically handle the registration. *See id.*

### B.   Plaintiffs Fail to Timely Renew the Domain Registration

Plaintiffs allege that Griffith registered the Domain with a company called Uniregistry in 2018. Doc. 24 ¶¶ 11, 21. Although Plaintiffs allege that GoDaddy Inc. acquired Uniregistry

GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

in 2020, *see id.* ¶ 22 they do not—and cannot—allege that they ever registered the Domain with GoDaddy or GoDaddy Inc.  Rather, at all relevant times prior to its expiration, the Domain was registered with Uniregistry.  *See* Doc. 24-3, 24-7 (Exs. C, G).  Uniregistry is a d/b/a of GoDaddy Online Services Cayman Islands.  *See* Request for Judicial Notice ("RJN") at Ex. A § 1.1.[2]

The exhibits attached to Plaintiffs' Amended Complaint indicate that the Domain registration expired on July 26, 2022 without being renewed by Griffith.  *See* Doc. 24-5, 24-7 (Exs. E, G).  At the time, Griffith was in federal prison and did not renew the registration himself.  *See* Doc. 24-4 (Ex. D) (August 3, 2022 email from Plaintiffs' counsel explaining that Griffith "is unfortunately in Allenwood federal penitentiary and cannot renew the domain himself").  Uniregistry provided Griffith with notice that the Domain registration expired without being renewed shortly thereafter, on July 31, 2022.  *See* Doc. 24 ¶ 25; Doc 24-7, Ex. G.

After the Domain registration expired, Plaintiffs allege that GoDaddy re-registered the Domain on July 26, 2022.  Doc. 24 ¶ 26; Doc. 24-3. (Ex. C).  Plaintiffs allege that on September 3, 2022, GoDaddy (even though it was not the registrar for the Domain) sold or transferred the Domain to Defendant Dynadot LLC ("Dynadot"), an online auction holder.  *See* Doc. 24 ¶ 33; Doc. 24-5 (Ex. E).  Plaintiffs further allege that Dynadot, in turn, conducted a sale-via-auction of the Domain that same day, and that Defendant Manifold Finance, Inc. ("Manifold") purchased it.  Doc. 24 ¶ 34.

---

[2] As set forth in Defendants' Request, judicial notice of the current version of Uniregistry's Registration and Service Agreement is appropriate under Fed. R. Evid. 201(b) because Plaintiffs attached a prior version of that Agreement as an exhibit to the Amended Complaint. *See* Doc. 24-1 (Exhibit A).  That prior version of Uniregistry's Registration and Service Agreement provides that Uniregistry "may modify this Agreement," and that "[t]he current version, including such modifications to this Agreement, will be posted on our website. Your continued use of the Registrar Services will constitute your acceptance of this Agreement with any revisions." Doc. 24-1 § 2.5.  The current version of Uniregistry's Registration and Service Agreement available on its website was revised on January 7, 2021, and is available at: https://uniregistry.com/legal/registration-agreement.

Importantly, the Amended Complaint fails to allege that Griffith—or anyone acting on his behalf—took ***any steps whatsoever*** to renew the Domain prior to the July 26, 2022 expiration.  Indeed, nowhere do Plaintiffs allege they ever contacted Uniregistry about renewing the Domain.  The first instance Plaintiffs allege that anyone acting on Griffith's behalf inquired about renewal of the Domain is on August 3, 2022—that is, over a week after the registration had ***already expired***.  Doc. 24 ¶ 27.  Moreover, Plaintiffs' belated attempts to untimely renew the registration amounted to sending two emails to a single GoDaddy employee—not to Uniregistry, the actual registrar—"to discuss manual renewal of the domain eth.link."  *See* Doc. 24-4 (Ex. D).  Based on the exhibits Plaintiffs attached to the Amended Complaint, this employee's responsibilities appear to have been entirely unrelated to domain name registration renewals or general customer service more broadly.  *See* Doc. 24-4, 24-8 (Exs. D, H).  Rather, this employee—a security executive and former law enforcement officer—was responsible for defending against "cyber, physical, and global security" threats.  Doc. 24-8 (Ex. H).  Plaintiffs appear to have contacted this individual regarding the renewal of a domain name that was not registered with GoDaddy because he appears to have met Plaintiffs' counsel at some point several years ago.  *Id.*  After these emails went unanswered, Plaintiffs do not allege that they took any further action  regarding this issue again for nearly a month, until September 1, 2022—well over a month after the Domain initially expired, and just two days before the Amended Complaint alleges that an online auction for Domain was held.  Doc. 24 ¶¶ 30, 33–34.  Again, Plaintiffs do not allege that they ever attempted to contact Uniregistry, the alleged registrar.

## C.    Plaintiffs' Agreement With Uniregistry

Plaintiffs admit that their relationship with Uniregistry is governed by, among other agreements, Uniregistry's Registration and Service Agreement included as an exhibit to the Amended Complaint.  Doc. 24-1 (Ex. A) (the "Uniregistry Agreement").  Plaintiffs do not allege they registered any domain names with GoDaddy, but to the extent that they made such an allegation, Plaintiffs admit that their relationship with GoDaddy is governed by, among other agreements, GoDaddy's Domain Name Registration Agreement (the "DNRA").  Doc.

24 ¶ 39.  However, the Amended Complaint does not allege that Plaintiffs ever entered into any contractual relationship with GoDaddy.  Rather, the only entity that Plaintiffs allege they contracted with for domain name registration services is Uniregistry.  *Id.* ¶ 21.

The Amended Complaint mischaracterizes the Uniregistry Agreement as somehow requiring automatic renewal of the Domain registration for Plaintiffs upon its expiration.  The plain language of the Uniregistry Agreement places no such contractual obligation on Uniregistry (and certainly not on any future affiliated entities Uniregistry might have).  Rather, that Agreement provides that automatic renewal is merely "the default setting[]" that is enabled "[a]s a courtesy to our customers," and which can be turned off by the customer.  Uniregistry Agreement, § 2.12; *accord* RJN at Ex. A § 2.9.  Moreover, the Uniregistry Agreement makes clear that automatic renewal is not guaranteed.  Uniregistry Agreement, § 2.12 ("In no event shall we be held liable for failure of automatic renewal payment as a consequence of your failure to maintain updated payment information or as a consequence of policies, procedures, or errors by the issuer of your payment instrument or payment service provider."); *accord* RJN at Ex. A § 2.9 (same).  Importantly, the Amended Complaint fails to allege that (a) Griffith elected to maintain the automatic renewal setting, or (b) Uniregistry successfully took payment from the payment method Griffith had on file for the Domain registration prior to its expiration on July 26, 2022.

The Uniregistry Agreement is clear regarding the consequences of a customer's failure to timely renew a domain name registration:

> In the event that you fail to renew your domain name prior to its expiration, your registration will expire and we may, at our discretion, elect to assume the registration and may hold it for our own account, delete it or transfer it to a third party. You acknowledge and agree that your right and interest in a domain name ceases upon its expiration and that any expired domain name may be made available for registration by a third party.

Uniregistry Agreement, § 2.12; *accord* RJN at Ex. A § 2.9.

### D.    The Instant Litigation

Plaintiffs commenced this action by filing a Complaint and requesting a temporary restraining order on September 5, 2022.  Dkt. No. 1.  Four days later, and without the benefit

5

of Defendants' briefing or appearance, the Court granted Plaintiffs' request for a preliminary injunction and ordered that the Domain be transferred back to Plaintiffs.  Dkt. No. 19. Plaintiffs subsequently filed an Amended Complaint on September 21, 2022.  The Amended Complaint brings five causes of action based on Plaintiffs' own failure to timely renew the Domain: Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Intentional Interference with Prospective Economic Advantage (Count III), Unfair Competition (Count IV), and Conversion (Count V).  *See* Doc. 24 ¶¶ 38–80.

## III.   LEGAL STANDARD

To avoid Rule 12(b)(6) dismissal, the Amended Complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Iqbal*, 556 U.S. at 678,  ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice.").  Moreover, "[t]he Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint."  *Stoyanof v. Crocodiles Not Waterlillies, L.L.C.*, No. CV 11-00384 HWG, 2011 WL 13232088, at *2 (D. Ariz. June 23, 2011) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## IV.   ARGUMENT

### A.   Plaintiffs Failed to State A Contract Claim Against Defendants

In order to state a claim for breach of contract, Plaintiffs are required to allege (1) the existence of a contract between Plaintiffs and the named Defendants, (2) a breach of the

contract by the named Defendants, and (3) resulting damages to Plaintiffs. *See Gillard v. Good Earth Power AZ LLC*, No. CV-17-01368-PHX-DLR, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019); *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). "The interpretation of a contract is a question of law for the court to decide, and the court must give effect to a contract provision as written if it is clear and unambiguous." *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, No. CV-19-04684-PHX-JJT, 2020 WL 411188, at *3 (D. Ariz. Jan. 24, 2020) (citing *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977)). Moreover, when interpreting the language of an unambiguous contract, courts will not "expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." *Alpine 4 Techs. Ltd. v. Martin*, No. CV-20-01679-PHX-DJH, 2022 WL 4548118, at *4 (D. Ariz. Sept. 29, 2022) (quoting *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 263 P.3d 69, 75 (Ariz. Ct. App. 2011)). Along a similar vein, courts "will not construe one provision in a contract so as to render another provision meaningless." *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993).

Plaintiffs' breach of contract claims are defective for a host of reasons addressed below, and must be dismissed.

### 1.   Plaintiffs Registered The Domain With Uniregistry, Not Defendants

Plaintiffs' breach of contract claim should be summarily dismissed for an obvious reason: Plaintiffs allege that they registered the Domain with Uniregistry, not GoDaddy or GoDaddy Inc. (and the latter is not a registrar to begin with). Plaintiffs' allegation that GoDaddy Inc. acquired Uniregistry does not somehow give Plaintiffs free license to sue GoDaddy Inc., GoDaddy, or any other related corporate entity based on some purported breach of Plaintiffs' agreement with Uniregistry. Plaintiffs have not asserted a veil-piercing theory, or offered any allegation to support such a theory. Indeed, Plaintiffs' own exhibits attached to the Amended Complaint show that the Domain was registered with Uniregistry until its expiration on July 26, 2022. *See* Doc. 24-3, 24-7 (Exs. C, G). Plaintiffs simply named the wrong entity as a defendant. Accordingly, Plaintiffs' breach of contract claim must be dismissed.

2.    <u>Plaintiffs' Allegations Regarding Any Alleged Breach of Contract are Refuted by Their Own Exhibits</u>

Setting aside the fact that Plaintiffs named the wrong defendants, Plaintiffs' breach of contract claim is also plainly lacking in merit.  Indeed, the allegations supporting that claim are contradicted by Plaintiffs' own exhibits.  *First*, Plaintiffs oddly suggest that the Domain registration was automatically renewed on their behalf for a full year-long term and does not expire until July 26, 2023.  *E.g.*, Doc. 24 ¶¶ 7, 40.  However, the Exhibits that Plaintiffs attached to the Amended Complaint refute those allegations—acknowledging that as of August 3, 2022, Griffith failed to timely renew the Domain and that it had already expired.  *See* Doc. 24-4, 25-5 (Ex. D; Ex. E ("The registration for this domain expired on July 26, 2022.")).

*Moreover*, Plaintiffs somehow attempt to blame GoDaddy for Plaintiffs' failure to timely renew the Domain prior to its expiration on July 26, 2022.  Plaintiffs' own exhibits, however, reveal the actual cause for this failure: Griffith was "in Allenwood federal penitentiary" at the time the registration expired, and was thus unable to timely "renew the domain himself."  Doc. 24-4 (Ex. D) (August 3, 2022 email from Plaintiffs' counsel).  Indeed, that same exhibit shows that Plaintiffs' representatives failed to take any steps to inquire about renewing the Domain registration until August 3, 2022—that is, over a week *after* the registration expired.

Plaintiffs' allegations that the Domain's registration automatically renewed, or that GoDaddy was somehow responsible for Plaintiffs' own failure to timely renew the Domain prior to its expiration, are flatly contradicted by the exhibits attached to the Amended Complaint.  Accordingly, the Court need not accept as true Plaintiffs' contrary allegations, and Plaintiffs' breach of contract claim based on their own failure to renew the Domain should be dismissed.  *See Molera v. City of Nogales*, No. 19-cv-328-TUC-CKJ, 2020 WL 364200, at *5 (D. Ariz. Jan. 22, 2020) (crediting exhibits attached to the complaint over contrary allegations in the complaint, and dismissing plaintiff's claim on this basis ).

3.      <u>Plaintiffs Failed to State a Breach of Contract Claim Based on the Domain Not Being Automatically Renewed</u>

Again, even setting aside the fact that Plaintiffs cannot state a claim against Defendants, given that they registered the Domain with Uniregistry, the Uniregistry Agreement makes clear that Plaintiffs could not state such a claim even if they had named Uniregistry as a defendant in this lawsuit.  The Uniregistry Agreement plainly does not create any enforceable obligation for Uniregistry to automatically renew the Domain.  Rather, the Uniregistry Agreement makes clear that any automatic renewal is merely a "default setting" provided "as a courtesy to our customers" and which can be turned off by the customer.  Uniregistry Agreement, § 2.12; RJN at Ex. A § 2.9.  Moreover, the Uniregistry Agreement makes clear that automatic renewal is *not* guaranteed.  *Id.*  ("In no event shall we be held liable for failure of automatic renewal payment as a consequence of your failure to maintain updated payment information or as a consequence of policies, procedures, or errors by the issuer of your payment instrument or payment service provider.").  Here, Plaintiffs do not allege that  (a) Griffith elected to maintain the automatic renewal setting, or (b) Uniregistry took payment from the payment method on file for the Domain registration prior to its expiration on July 26, 2022.  Thus, Plaintiffs' attempt to transform a mere default setting into a breach of contract claim must be dismissed.

4.      <u>Plaintiffs Failed to State a Breach of Contract Claim Based on Their Failure to Manually Renew the Domain Registration</u>

The Amended Complaint is devoid of any allegations that Plaintiffs took any action whatsoever to renew the Domain prior to its expiration on July 26, 2022.  To the contrary, the first instance that Plaintiffs allege that anyone acting on their behalf even inquired about renewal was on August 3, 2022—over a week *after* the registration had already expired— when Plaintiffs' representatives emailed an unwitting security executive at GoDaddy.  Indeed, Plaintiffs fail to allege that they *ever* contacted anyone at Uniregistry; that is, the actual entity with whom they allege they registered the Domain.

Again, even if they had brought suit against Uniregistry, any breach of contract claim on this basis would be meritless under the terms of the Uniregistry Agreement.  Given that

GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Plaintiffs took no efforts to timely renew the Domain prior to its expiration, Plaintiffs' "right and interest in [the Domain] cease[d] upon its expiration," and Uniregistry was contractually allowed to make the "expired domain name … available for registration by a third party." Uniregistry Agreement, § 2.12; RJN at Ex. A § 2.9.

### B. Plaintiffs Necessarily Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing may also be summarily dismissed. "Arizona law implies a covenant of good faith and fair dealing in every contract." *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155–56 (D. Ariz. 2016) (quoting *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002). Such covenants, however, "presume the existence of a valid contract" between the parties at issue. *Gruender v. Rosell*, No. CV-091347-PHX-DGC, 2010 WL 2079759, at *4 (D. Ariz. May 24, 2010); *see Zalkow v. Taymor Indus. U.S.A., Inc.*, No. 2:14-CV-00243 JWS, 2015 WL 2128902, at *3 (D. Ariz. May 5, 2015) (explaining that the defendant "cannot be held liable for bad faith performance of a contract to which it was not a party"). As noted above, Plaintiffs registered the Domain with Uniregistry, not GoDaddy or GoDaddy Inc., and thus cannot state a contract claim against Defendants concerning the Domain. For the same reasons, Plaintiffs cannot state an implied covenant claim against Defendants.

In any event, Plaintiffs' claim based on this implied covenant also lacks merit. "[A] breach of contract does not necessarily constitute a breach of the implied covenant of good faith and fair dealing." *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 960 (D. Ariz. 2020) (citation omitted). Rather, to state a claim, a plaintiff must show that a defendant breached this covenant "either by acting in a manner that denies the other party the reasonably expected benefits of the contract or by using its discretion under the terms of the contract for a reason beyond the risks assumed by the party claiming a breach." *Argyros v. Island Sotrage & Marine LLC*, No. 20-cv-08195-PCT-JJT, 2021 WL 4427061, at *4 (D. Ariz. Sept. 27, 2021) (internal quotation marks and citation omitted). It is well established that any claim based on this implied covenant "cannot directly contradict an

express contract term," *Day*, 174 F. Supp. 3d at 1155–56 (citation omitted), and "an implied covenant claim is not a tool to create new terms of a contract." *Argyros*, 2021 WL 4427061, at *4; *see In re Banner Health Data Breach Litig.*, No. 16-cv-02696-PHX-SRB, 2017 WL 6763548, at *5 (D. Ariz. Dec. 20, 2017) ("[T]he implied covenant of good faith and fair dealing ensures that parties do not frustrate already-existing contract terms; it does not create new ones.").

For similar reasons that Plaintiffs' breach of contract claim must be dismissed on the merits, so too must their claim for breach of the implied covenant of good faith and fair dealing. *First*, Plaintiffs cannot plausibly allege any breach of the implied covenant based on the Domain not being automatically renewed.  As noted above (*see* Section IV.A.3., *supra*), automatic renewal is merely a default setting for convenience—not a contractual or implied guarantee—and the Uniregistry Agreement *expressly* provides that Uniregistry cannot be held liable in these circumstances.  *See* Uniregistry Agreement, § 2.12; RJN at Ex. A § 2.9. Plaintiffs' implied covenant claim thus amounts to an attempt to improperly contradict the existing terms in the Uniregistry Agreement.

*Moreover*, Plaintiffs cannot plausibly alleged any breach of the implied covenant based on their failure to manually renew the Domain prior to its expiration.  Nowhere does the Amended Complaint allege that GoDaddy or GoDaddy Inc.—or any entity, including Uniregistry—took taken any action that would have hindered Plaintiffs from timely renewing the Domain registration manually.  Rather, as explained in Section IV.A.4., *supra*, Plaintiffs own exhibits attached to the Amended Complaint make clear that the Domain expired because neither Griffith nor anyone acting on his behalf took any steps to timely renew the registration. The Uniregistry Agreement expressly allows Uniregistry to make available any expired domain "available for registration by a third party," Uniregistry Agreement, § 2.12, thus there can necessarily be no liability on this basis.  *Accord* RJN at Ex. A § 2.9

Indeed, Plaintiffs' alleged efforts to renew the Domain's registration amount to something of a comedy of errors.  That is, Plaintiffs: (a) failed to take any action to timely renew the Domain registration prior to its expiration on July 26, 2022; then over a week after

the Domain's registration had already expired (b) emailed an unwitting security executive at GoDaddy regarding this issue, notwithstanding that GoDaddy is not the registrar and that this employee has no responsibility for domain name registrations or renewals; then, having unsurprisingly received no response, Plaintiffs (c) took no further action for nearly a month, until September 1, 2022—a week after plans to auction the Domain were already announced.

"If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." *Jones v. GEICO Cas. Co.*, No. 20-cv-01734-PHX-DJH, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021) (citation omitted). Here, Plaintiffs cannot somehow recast their own repeated failures to timely renewal of the Domain registration into a breach of the implied covenant of good faith and fair dealing against *anyone*. The claim should be dismissed.

**C. Plaintiffs Fail to State a Claim for Intentional Interference with Prospective Economic Advantage Because Defendants Had No Knowledge of Plaintiffs' Business Expectancy and Did Not Wrongfully Interfere With Any Such Unknown Relationship**

The Amended Complaint plainly fails to state a claim for intentional interference with prospective economic advantage. In order to state such a claim, Plaintiffs must plausibly allege:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Erchonia Med. Inc. v. Smith*, No. 02-cv-2036-PHX-MHM, 2005 WL 8160621, at *14 (D. Ariz. Dec. 21, 2005).

Plaintiffs' claim must be dismissed for at least two reasons. *First*, the Amended Complaint fails to plausibly allege that Defendants had knowledge of Plaintiffs' purported business expectancy at the time the Domain expired. The Amended Complaint does not allege

that Defendants (or any entity, including Uniregistry) took any action to prevent Plaintiffs from renewing the Domain prior to its expiration.  Rather, as already explained, Plaintiffs' own exhibits reveal that the Domain expired because Plaintiffs failed to take any action to renew the registration until well after its expiration.  Nowhere does the Amended Complaint allege any facts setting forth how or why Defendants would have knowledge of Plaintiffs' business expectancy when Plaintiffs (a) did not register the Domain with GoDaddy (and could not have registered it with GoDaddy Inc., as that entity is not a registrar), and (b)  failed to even attempt to renew the Domain through an automated process.  *See Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007) (dismissing intentional interference claim where "even assuming [the plaintiff] did have a business expectancy, he has not … alleged any facts supporting his statement that the [defendants] knew of, and intentionally interfered with, that expectancy").

*Second*, and for similar reasons, the Amended Complaint fails to plausibly allege that Defendants took any intentionally wrongful act to disrupt Plaintiffs' relationship with a third party.  *See Strojnik v. Gen. Ins. Co. of Am.*, 36 P.3d 1200, 1204 (Ariz. Ct. App. 2001) (explaining that a defendant is "not ordinarily be liable for tortious interference with a business expectancy absent a showing that the defendant's actions were improper as to means or motive").  Again, Plaintiffs' exhibits attached to the Amended Complaint indicate that Plaintiffs' own failure to attempt to timely renew the Domain's registration—followed by their botched attempts to belatedly renew the registration following its expiration by contacting an unwitting GoDaddy employee, rather than the Uniregistry—caused the Domain to be auctioned.  Plaintiffs fail to plausibly allege sufficient facts showing any "interference" by Defendants, let alone any improper action.  *See Praxair Servs., Inc. v. Rabb*, No. 07-cv-677-TUC-RCC, 2008 WL 11339091, at *1 (D. Ariz. May 21, 2008) (dismissing defendants' counterclaims for intentional interference where they "have not alleged any facts that indicate the Plaintiff had knowledge of any business expectancy or relationships nor that the Plaintiff illegally interfered with any such expectancy or relationships").

GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

1  Plaintiffs' cannot somehow hold Defendants liable for their own failures, under the

2  guise of a strained tort claim.  The Amended Complaint's claim for intentional interference

3  with prospective economic advantage should be dismissed.

4  **D.  Plaintiffs' Unfair Competition is Facially Deficient**

5  Plaintiffs' claim for unfair competition is defective on its face for at least two reasons.

6  *First*, an unfair competition claim is entirely inapposite to the facts alleged in the Amended

7  Complaint.  It appears to be an open question whether an unfair competition claim is

8  cognizable under Arizona common law.  *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d

9  545, 547 (Ariz. 2014) ("we do not decide here whether Arizona common law recognizes a

10  claim for unfair competition").   Notwithstanding, to the extent recognized, an unfair

11  competition claim "encompasses several tort theories, such as trademark infringement, false

12  advertising, 'palming off,' and misappropriation."  *Cramton v. Grabbagreen Franchising*

13  *LLC,* No. 17-cv-04663-PHX-DWL, 2019 WL 7048773, at *39 (D. Ariz. Dec. 23, 2019)

14  (citation omitted); *see Realty Executives Int'l Inc. v. RE/EX California Inc.*, No. 2:09-CV-

15  00562-RCJ, 2011 WL 13185715, at *8 (D. Ariz. June 1, 2011) ("[T]he central tort in unfair

16  competition at common law is known as 'palming off,' or 'passing off.' It consists in a false

17  representation tending to induce buyers to believe that the defendant's product is that of the

18  plaintiff....") (citation omitted).  As such, in order to prevail on a claim of unfair competition,

19  "a plaintiff must either show that it was engaged in competitive business with the defendant

20  or that the defendant's actions were likely to produce public confusion." *TLX, Inc. v. JetBlue*

21  *Airways Corp.*, No. 19-cv-04734-PHX-SMB, 2022 WL 973586, at *4 (D. Ariz. Mar. 31, 2022)

22  (internal quotations omitted).

23  Here, Plaintiffs cannot make this requisite showing because they do not allege they are

24  competitors of Defendants.  *See TLX, Inc.*, 2022 WL 973586, at *4 (stating that the plaintiff

25  "fails to provide any case law supporting a claim of unfair competition against a company that

26  is not a competitor but a customer").  Indeed, Plaintiffs' allegations are entirely unrelated to

27  the tort theories that an unfair competition claim encompasses. *Cramton*, 2019 WL 7048773,

28  at *39 (dismissing unfair competition counterclaim' where the defendants "do not seem to be

arguing that [plaintiff] is liable for trademark infringement, false advertising, palming off, or misappropriation"). Thus, the unfair competition claim should be summarily dismissed on this basis alone.

*Second*, the Amended Complaint fails to plausibly allege that Defendants have conducted business that is "contrary to honest practice in industrial or commercial matters." *TLX, Inc.*, 2022 WL 973586, at *4 (citation omitted). As explained at length above, Plaintiffs' own failures to take any steps to timely renew the Domain's registration caused that registration to expire. Plaintiffs cannot now seek to shift blame for their own inexplicable failures by labeling the obvious consequences of their dilatory behavior towards renewal of the Domain registration as being somehow "contrary to the honest practice in industrial or commercial matters." The claim should be dismissed.

### E.     Plaintiffs' Claim for Conversion Necessarily Fails

Plaintiffs' conversion claim is also deficient as a matter of law and must be dismissed for at least three reasons. *First*, no action for conversion can be maintained against GoDaddy or GoDaddy Inc. because the Domain was registered with Uniregistry, not Defendants. "In Arizona, the tort of conversion requires an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Health Tech. Invs., Ltd. v. Itamar Med., Ltd.*, No. CV-06-1229-PHX-SRB, 2007 WL 9724273, at *4 (D. Ariz. May 29, 2007) (internal quotations omitted). Accordingly, to the extent any proper conversion claim may be plead—and for the reasons discussed below, it cannot—the claim must be plead against Uniregistry alone because it was the actual registrar for the Domain at the time of the purported conversion.

*Second*, under Arizona law, a domain registration, as intangible property, cannot be the subject of a conversion action. Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). There must be an ownership or possessory interest in the

chattel.  *See Autoville, Inc. v. Friedman*, 510 P.2d 400, 403 (Ariz. Ct App. 1973).  However, "[a]n action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document."  *Miller*, 104 P.3d at 472.  "Arizona does not recognize a claim for conversion of intangible property" absent this merger.  *BioD, LLC v. Amino Tech., LLC*, 2014 WL 268644, at *11 (D. Ariz. Jan. 24, 2014).  This merger requirement reaches intangible property such as securities, not domain registrations, which are neither merged in nor identified with any document.  Thus, Plaintiffs cannot allege a claim for conversion as a matter of law.

*Third*, "[i]n order to maintain an action for conversion the plaintiff must show that at the time of the conversion he was in possession of the property or was entitled to the immediate possession thereof."  *Health Tech. Invs., Ltd.*, 2007 WL 9724273, at *4 (quoting *Empire Fire & Marine Ins. Co. v. First Nat'l Bank of Ariz.*, 546 P.2d 1166, 1168 (Ariz. Ct. App. 1976)).  Here, Plaintiffs cannot plausibly allege that they were properly in possession of the Domain or entitled to immediate possession at the time of the alleged conversion.  Rather, Plaintiffs own exhibits attached to their Amended Complaint indicates that at the time of the purported conversion, the Domain's registration had *already* expired—again, because Plaintiffs failed to take any action to timely renew the registration.  Because Plaintiffs lacked a right to immediate possession of the Domain at the time of the alleged "conversion," this claim must also be dismissed.

### F.    Plaintiffs Violated Rule 8 by Lumping the Defendants Together

Plaintiffs' allegations are entirely deficient as to any Defendant, and the Complaint may be dismissed in its entirety.  In the alternative, Defendants move under Fed. R. Civ. P. 12(e) for a more definite statement.  Plaintiffs' Amended Complaint does not distinguish among GoDaddy and GoDaddy Inc., which violates Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint is deficient under Rule 8 when it "repeatedly lumps together all of the defendants together as a collective whole . . . without specifically alleging the role that each defendant played in causing [p]laintiff's alleged injury."  *Petramala v. Connelly*, No. CV-18-03000-

PHX-SMB, 2019 WL 1932108, at *1 (D. Ariz. May 1, 2019).  Courts will dismiss complaints that use "the shotgun approach by making every allegation against" all of the defendants.  *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-02332-PHX-JAT, 2019 WL 1921594, at *6 (D. Ariz. Apr. 30, 2019).  Plaintiffs do not make discrete allegations against GoDaddy and GoDaddy Inc., instead impermissibly lumping both Defendants together.   Defendants respectfully request that if this Court does not dismiss Plaintiffs' Complaint, then it instead grant Defendants' motion under Rule 12(e) for a more definite statement.

## V.      CONCLUSION

As set forth above, the Amended Complaint fails to state a claim upon which relief can be granted and Defendants respectfully requests that this Court dismiss the Amended Complaint in its entirety with prejudice.


Dated:  December 12, 2022

**COZEN O'CONNOR**
Haryle Kaldis (*to be admitted pro hac vice*)

By:  *s/Haryle Kaldis*
          Haryle Kaldis

Attorneys for Defendant

GODADDY INC. and GODADDY.COM, LLC

1

## **CERTIFICATE OF SERVICE**

2   The undersigned hereby certifies, under penalty of perjury under the laws of the State

3   of Arizona that I electronically filed the foregoing document with the Clerk of the Court using

4   the CM/ECF system which will send notification of such filing to the following:

5

6   Justin Kingsolver                           Warrington S. Parker, III
    Alexander Urbelis                           Jacob Canter
7   Andrew Pruitt                               Katie Lee
    CROWELL & MORING LLP                        CROWELL & MORING LLP
8   1001 Pennsylvania Avenue, N.W.              3 Embarcadero Center, 26th FL
    Washington, DC 20004                        San Francisco, CA 94111
9   Tel:  (202) 624-2500                        Tel:  (415) 986-2800
    Fax:  (202) 628-5116                        Fax:  (415) 986-2827
10  JKingsolver@crowell.com                     WParker@crowell.com
    AUrbelis@crowell.com                        JCanter@crowell.com
11  APruitt@crowell.com                         KatLee@crowell.com

12  Counsel for Plaintiffs                      Counsel for Plaintiffs

13

14   SIGNED AND DATED this 12th day of December, 2022 at Philadelphia, Pennsylvania.

15                                 COZEN O'CONNOR

16

17                                 By:   *s/ Haryle Kaldis*
                                         Haryle Kaldis
18

19

20

21

22

23

24

25

26

27

28