CROWELL & MORING LLP
Justin D. Kingsolver (AZ Bar No. 035476)
JKingsolver@crowell.com
Alexander Urbelis (*pro hac vice*)
AUrbelis@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 624-2500

CROWELL & MORING LLP
Warrington S. Parker, III (*pro hac vice*)
WParker@crowell.com
Jacob Canter (*pro hac vice*)
JCanter@crowell.com
Katie Lee (*pro hac vice*)
KatLee@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800

Attorneys for Plaintiffs True Names, Ltd. and Virgil Griffith

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| True Names, Ltd. d/b/a Ethereum Name Service, a Singapore corporation; and Virgil Griffith, an individual,<br><br>    Plaintiffs,<br>v.<br><br>GoDaddy, Inc., a Delaware corporation; GoDaddy.com LLC, a Delaware corporation; Dynadot LLC, a California corporation; and Manifold Finance, Inc., a Delaware corporation,<br><br>    Defendants. | No. 2:22-cv-01494-JJT<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS GODADDY, INC. AND GODADDY.COM LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>(Oral Argument Requested) |

Plaintiffs True Names Ltd. and Virgil Griffith hereby submit their Opposition to Defendants GoDaddy, Inc. and GoDaddy.com LLC's (collectively, "GoDaddy") Motion to Dismiss the First Amended Complaint ("FAC").

## I. INTRODUCTION

The FAC alleges that Mr. Griffith renewed the eth.link domain ("Domain"). It includes exhibits that show that the Domain was renewed for one year, until July 26, 2023, at a time that was within the period to renew the Domain. *See* Dkt. 24-3 at 2 (Whois.com data, updated on July 31, 2022, reflects Domain expiration is July 26, 2023); Dkt. 24-7 at 2 (stating that on July 31, 2022, it is "not too late to renew").

Despite this, GoDaddy claims that the Domain was never renewed. This response is the crux of each of their arguments. However, the FAC alleges the contrary and that is sufficient at this stage of the proceeding.[1] Moreover, even were GoDaddy somehow able to persuade this Court as a factual matter of their assertion, Plaintiffs' covenant of good faith and fair dealing claim is premised on the claim that GoDaddy did *not* renew so as to frustrate the intent of the agreement allowing renewal. Thus, the Court must reject GoDaddy's arguments that the contract and tort claims should be dismissed.

GoDaddy also argues that the conversion claim must be dismissed because this claim does not attach to domains. However, Arizona law has not answered this question. California and New York courts have said that conversion claims apply to domains, and Plaintiffs respectfully contend that Arizona should follow California and New York here.

## II. FACTUAL ALLEGATIONS

### A. Mr. Griffith Registered the Domain for True Names, Ltd.'s Benefit

Mr. Griffith is one of the founders of True Names, Ltd. ("TNL"). *See* Dkt. 24, ¶¶ 11, 21. In 2018, Mr. Griffith "for and on behalf of [TNL], registered the domain name eth.link with a company called Uniregistry." *Id*. ¶ 21.

---

[1] The first paragraph of the FAC states that the Domain is "duly registered" and again that the Domain "is registered." Dkt. 24, ¶ 1. And this is stated throughout the FAC. *See id*. ¶ 26 ("Then on August 3, 2022, Whois.com reflects that the eth.link domain was re-registered. . ."); *id*. ¶ 7 ("GoDaddy, with whom Plaintiffs registered" the Domain).

1

"The Uniregistry agreement provided for automatic renewals of registrations." *Id*. "Since 2018, as reflected in information gathered and obtained by Whois.com (which tracks registrations) the eth.link domain name has been renewed." *Id*. ¶ 24. "In 2020, GoDaddy, Inc. acquired Uniregistry." *Id*. ¶ 22.

### B. The Domain Renewed on July 31, 2022, and the New Expiration Date was Set for July 23, 2023

On July 31, 2022, Mr. Griffith received a notice via email from GoDaddy that the Domain had expired but that "[i]t is not too late to renew" the Domain. *See id*. ¶ 25; Dkt. 24-7 at 2. In response to this notice, counsel for Plaintiffs sent an email on August 3, 2022, to a GoDaddy employee, asking for help to renew. *See* Dkt. 24, ¶ 27; 24-4 at 2.

After sending the email, Plaintiffs discovered from the Whois.com data that the Domain had been renewed. *See* Dkt. 24, ¶ 26; Dkt. 24-3 at 2. Whois.com "tracks registrations" and is a reliable source of information within the domain name industry. *See* Dkt. 24, ¶ 26; Dkt. 24-3 at 2. The Whois.com data on August 3, 2022, stated that the "update date" for the Domain was July 31, 2022, and that the "registry expiry date" was "2023-07-26," or July 26, 2023. Dkt. 24-3 at 2. "[R]egistry expiry date" data reflects the expiration date for the domain. *See* Dkt. 24, ¶ 26.

Thus, based on Whois.com data, the Domain was renewed on July 31, 2022, and the new expiration date was July 23, 2023. The notice from GoDaddy acknowledged that on July 31, 2022, "[i]t is not too late to renew," *see* Dkt. 24-7 at 2, and the Whois.com data showed that the Domain *was* renewed on that same day, *see* Dkt. 24-3 at 2.[2]

---

[2] The FAC erroneously alleges that the renewal occurred on July 26, 2022. That is an error as the exhibits attached to the FAC reflect that the renewal occurred on July 31, 2022. Dkt. 24-3 at 2. Plaintiffs' motion for a TRO did not turn on this error. The pleading alleges a contract breach whether Plaintiffs renewed on July 26, 2022, or July 31, 2022, because GoDaddy took the Domain away from Plaintiffs after both dates occurred. *See infra*, Argument, § V. Moreover, the TRO was granted on the basis of the breach of the convenient, tortious interference, and unfair competition claims as well. *See* Dkt. 19. The covenant claim is available in the event that the Court concludes there was no renewal. *See infra*, Argument, § V.E. And the tort claims are based on conduct GoDaddy completed in August and September, 2022, after both July 26 and July 31. *See infra*, Argument, §§ V.F-G.

2

For this reason, counsel for Plaintiffs emailed the same GoDaddy employee three hours after the first email on August 3, 2022, and stated that "we were able to update the domain name's registration." Dkt. 24-4 at 2.

### C. GoDaddy Sells the Domain

After August 3, 2022, Plaintiffs believed concerns with the Domain had been resolved because the Whois.com data showed that the Domain was successfully renewed until July 26, 2023. *See* Dkt. 24, ¶¶ 26-27; Dkt. 24-4 at 2. Also, GoDaddy was on notice that Plaintiffs believed that the Domain was renewed because Plaintiffs had told GoDaddy that "we were able to update the domain name's registration." Dkt. 24-4 at 2.

Nonetheless, on August 25, 2022, GoDaddy announced that the eth.link domain "expired" on July 26, 2022, was "progressing through the expiration lifecycle," and "absent a renewal by the current registrant" was "expected to be returned to the registry"—that is, be available for purchase—on September 5, 2022. Dkt. 24, ¶ 28; Dkt. 24-5 at 2.

This announcement included false information, because, as explained above, the Domain had been renewed. *See e.g.,* Dkt. 24-3 at 2. The announcement also breached the domain registration agreement as that contract does not permit GoDaddy to unilaterally and without justification make a domain available for purchase if that domain has been renewed. *See infra*, Argument, § V.B.

Plaintiffs contacted GoDaddy via letter on September 1, 2022, to ask them to not place the Domain on the registry. *See* Dkt. 24, ¶ 30; Dkt. 24-6 at 2. The letter explained that the Domain had been renewed and that GoDaddy's conduct had the potential to harm two million ENS addresses that can rely on the Domain. *See* Dkt. 24, ¶ 31; Dkt. 24-6.

GoDaddy did not respond to Plaintiffs. *See* Dkt. 24, ¶ 32. Instead, on September 3, 2022, Plaintiffs learned that Defendant Manifold Finance, Inc. had allegedly purchased the Domain off an auction managed by Defendant Dynadot LLC. *See id.* ¶ 33. Thus, GoDaddy failed to follow the terms of its own public announcement, as it made the Domain available for purchase prior to September 5, 2022. *See id.* Moreover, GoDaddy

3

again breached the registration agreement by allegedly giving Dynadot the Domain and allowing Dynadot to allegedly auction the Domain. *See infra*, Argument, § V.B.

## III. PROCEDURAL POSTURE

Plaintiffs initiated this action on September 5, 2022, by filing a Complaint and an Ex Parte Motion for a Temporary Restraining Order ("TRO Motion"). *See* Dkt. 1.[3] Plaintiffs properly notified and served all Defendants. *See* Dkt. 10 at 1-2; Dkt. 13; Dkt. 14; Dkt. 16 at 3-5; Dkt. 22 at 2-3; Dkt. 26; Dkt. 27; Dkt. 30; Dkt. 31.

On September 9, 2022, this Court issued a preliminary injunction against all Defendants. *See* Dkt. 19. On September 21, 2022, Plaintiffs filed the FAC, which added the conversion claim against all Defendants. Dkt. 24. GoDaddy filed its Motion to Dismiss on December 12, 2022. Dkt. 49, Dkt. 50.

## IV. LEGAL STANDARD

"A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to the plaintiff." *Bain v. California Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (quotation omitted). When deciding a motion to dismiss, the Court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019). All allegations in the operative complaint must be construed as true and movants may not "cherry-pick allegations." *See Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, 2021 WL 2317410, at *5 (S.D. Cal. June 7, 2021) (denying motion to dismiss for this reason); *Johnson v. Nissan N. Am., Inc.*, 2018 WL 905850, at *7 (N.D. Cal. Feb. 15, 2018) (same); *Verrecchia v. Aviss*, 2017 WL 9486151, at *10 (C.D. Cal. Nov. 8, 2017) (same); *Wilkins v. Bank of Am., N.A.*, 2016 WL 5940082, at *5 (E.D. Cal. Aug. 19, 2016) (same).

---

[3] The intentional interference and unfair competition claims were also brought against Dynadot and Manifold Finance. *See* Dkt. 1.

4

"It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (ellipses in original).

## V. ARGUMENT

GoDaddy's Motion relies primarily on the following argument: "the Amended Complaint fails to allege that (a) Griffith elected to maintain the automatic renewal setting, or (b) Uniregistry successfully took payment from the payment method Griffith had on file for the Domain registration prior to its expiration on July 26, 2022." Dkt. 50 at 6. This argument fails to "constru[e] the complaint in the light most favorable to" Plaintiffs. *Bain*, 891 F.3d at 1211. It also "cherry pick[s] paragraphs from the FAC while ignoring other detailed allegations." *Verrecchia*, 2017 WL 9486151, at *10.

First, the FAC alleges that the Domain was renewed on July 31, 2022—which is the same date that the GoDaddy notice states that "[i]t is not too late to renew" the Domain. Dkt. 24-3; Dkt. 24-7. Because the Domain was successfully renewed on the same day that GoDaddy stated that it is not too late to renew, then the appropriate inference is that the proper registrar got paid for the renewal. *See* Dkt. 24-1; Dkt. 24-2. GoDaddy fails to make this proper inference in Plaintiffs' favor.

GoDaddy thus does not properly construe the FAC—ignoring allegations it does not prefer and construing the allegations in its own favor, not Plaintiffs. This is improper. *See Bain*, 891 F.3d at 1211; *Verrecchia*, 2017 WL 9486151, at *10. After discovery, GoDaddy can bring a motion for summary judgment. But this is not the proper vehicle to argue that the facts are in its favor.

### A. GoDaddy, Inc. & GoDaddy.com LLC are Proper Contract Defendants

GoDaddy says the contract claim must be dismissed because Plaintiffs have sued the wrong party. *See* Dkt. 50 at 8. GoDaddy says that the only proper party is Uniregistry (the d/b/a for GoDaddy Online Services Cayman Islands) and that Plaintiffs have not asserted a veil-piercing theory to sue GoDaddy, Inc. or GoDaddy.com LLC. *See id.*

5

GoDaddy does not dispute that GoDaddy, Inc. acquired Uniregistry and that the FAC alleges this. *See* Dkt. 24, ¶ 22. GoDaddy does not dispute that GoDaddy.com LLC has a registration agreement that domain holders may be bound to and that the FAC alleges this. *See id*. GoDaddy does not dispute that at least one of these GoDaddy entities published the notice on August 25, 2022, which states that the Domain would return to the registry on September 5, 2022, absent Plaintiffs' renewal. *See* Dkt. 24-5. These allegations assert that GoDaddy, Inc. and GoDaddy.com LLC took actions that only a party to the contract could be able to take. At the pleading stage, this is sufficient.

Nonetheless, for the first time, during the Motion to Dismiss process, Plaintiffs were told that the wrong party was sued. Whether or not this is true, it is not a basis to dismiss, just to amend. *Ahluwalia v. U.S. Postal Serv.*, 914 F.2d 1496 (9th Cir. 1990) ("Although he named the wrong party defendant, his complaint could have been amended to name the proper defendant pursuant to Fed. R. Civ. P. 15. Thus, his ADEA claim . . . should not have been dismissed without leave to amend."); *Taylor v. United States*, 2010 WL 729496, at *3 (D. Ariz. Feb. 26, 2010) ("Defendant Kroll Factual Data, Inc. has sought dismissal on the ground of improper service. [ ] Defendant asserts that Plaintiff has served the wrong party: Kroll Factual Data Bureau instead of Kroll Factual Data, Inc., a Colorado corporation. [ ] The Court will deny Defendant's motion to dismiss for improper service without prejudice.") (citations omitted); *Bengiveno v. Pulte Home Corp.*, 2007 WL 3145100, at *2 (D. Ariz. Oct. 25, 2007) ("defendant contends that plaintiff has sued the wrong party. This appears to be an easily remedied technical mistake in the pleading.").[4]

Moreover, GoDaddy "made no statements that could reasonably be construed as putting Plaintiff on notice that it had sued the wrong party" until the day it was planning to file the Motion to Dismiss, and it "would be perverse to prevent amendment when the

---

[4] Other courts in this circuit agree. *See Sameer v. Right Moves 4 U*, 2018 WL 1875536, at *2 (E.D. Cal. Apr. 19, 2018); *Coen Co., Inc. v. Pan Int'l, Ltd.*, 2014 WL 12607804, at *1 (N.D. Cal. Aug. 25, 2014); *Chrome Hearts, LLC v. Alma Shop*, 2009 WL 10680869, at *6 (D. Guam Aug. 13, 2009).

party opposing the amendment is largely responsible for the prejudice." *See Equal Emp. Opportunity Comm'n v. AutoNation USA Corp.*, 2007 WL 9724419, at *3 (D. Ariz. May 3, 2007). GoDaddy's silence until the eleventh hour is even worse given that GoDaddy had an opportunity to raise this at the TRO hearing, which it failed to attend. *See* Dkt. 19.

Also, as long as the proper party is on notice, naming the technical wrong party still allows the defendant to respond to the pleadings—as has occurred in this Motion. *See e.g.*, *Chrome Hearts, LLC*, 2009 WL 10680869, at *6 ("There is an important distinction between a complaint that sues the wrong party, and a complaint that sues the right party by the wrong name. [ ] The former is a case of mistaken identity, while the latter is a mere misnomer. [ ] When a misnomer occurs, the concern that an unwary defendant will be brought into the lawsuit and unfairly prejudiced is not present.").

Thus, Plaintiffs have not sued the wrong parties, and the other GoDaddy entity had sufficient notice of the litigation. Plaintiffs will, however, file a Second Amended Complaint after the Court rules on GoDaddy's Motion to Dismiss to add the additional GoDaddy entity that is doing business as Uniregistry.

### B. The FAC Sufficiently Alleges Breach of Contract

GoDaddy claims that a January 2021 version of the Uniregistry agreement controls. For the purposes of this argument, Plaintiffs do not contest that fact. But it changes nothing because the relevant terms of the agreement attached to the FAC and the January 2021 agreement are not different.[5] GoDaddy does not argue otherwise.

In Arizona, "[w]hen parties bind themselves to a lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous." *BMW of N. Am., LLC v. Mini Works, LLC*, 166 F. Supp. 3d 976, 982 (D. Ariz. 2010) (citations omitted).

The 2021 Agreement unambiguously states that "if [GoDaddy has] elected to maintain the domain name beyond expiration, [GoDaddy] "will provide [the registrant]

---

[5] The 2021 version of the domain registration agreement ("2021 Agreement") that GoDaddy cites in its Motion to Dismiss does not include a choice of law provision. In its motion, GoDaddy appears to contend that Arizona law applies. *See* Dkt. 50 at 7-8 (applying Arizona law). Plaintiffs will also apply Arizona contract law for this motion.

7

with a grace period of thirty (30) days during which you may renew the domain name." *See* Dkt. 54-1, at 4 (§ 2.9). This is not different than the agreement attached to Plaintiffs' FAC. *See* Dkt. 24-1, at 6 (§ 2.12).[6] Thus, GoDaddy's July 31, 2022, notice to Plaintiffs that it is not too late to renew is consistent with the contract's clear language, and Plaintiffs' renewal on July 31, 2022 is permitted based on the contract's clear language.

Also, the 2021 Agreement states that GoDaddy will only unilaterally "cancel, suspend, transfer or modify" a domain registration if it has a justification for doing so. *See id*. at 5 (§ 2.12). The same is true of the agreement attached to Plaintiffs' FAC. *See* Dkt. 24-1, at 6 (§ 2.15). Plaintiffs tried to contact GoDaddy about the Domain's registration status, but GoDaddy never responded. *See* Dkt. 24, ¶¶ 30-32; Dkt. 24-6. Thus, the FAC properly alleges that GoDaddy had no justification for taking the Domain away from Plaintiffs, and thus that GoDaddy failed to comply with its own contract.

Finally, the 2021 Agreement states that a third party may only purchase a domain from an auction if that domain has not been renewed. *See* Dkt. 54-1 at 4 (§ 2.9) ("If the name is sold during any such auction, it will be acquired by the prevailing party and will not remain available for renewal by you").[7] Again, this language is not different than the agreement attached to the FAC. *See* Dkt. 24-1, at 6 (§ 2.12). Thus, GoDaddy breached its contract with Plaintiffs by allowing Dynadot to auction the Domain to Manifold Finance when Plaintiffs had already renewed the Domain.

Each of these breaches is an independent basis to deny GoDaddy's motion to dismiss the contract claim. Courts in this District refuse to dismiss claims for breach of contract when the language is unambiguous and the allegations are sufficient to show that a breach occurred. *See Raygarr LLC v. Emps. Mut. Cas. Co.*, 2018 WL 4207998, at *3 (D. Ariz. Sept. 4, 2018); *RHN Inc. v. CNA Nat'l Warranty Corp.*, 2019 WL 4345332, at *3 (D. Ariz. Sept. 12, 2019).

---

[6] The 2017 agreement however says that the grace period is 40 days.
[7] The remainder of this provision is cut off on the docket entry, but is available to review online. *See infra*, n. 4.

8

### C. Plaintiffs' Exhibits Do Not Refute the Breach of Contract Claim

GoDaddy states that the exhibits attached to the FAC reflect that "Griffith failed to timely renew the Domain and that it had already expired" on August 3, 2022. Dkt. 50 at 9. This does not accurately reflect the FAC or exhibits. *See supra*, Argument, §§ V, V.B.

GoDaddy also states that Plaintiffs "attempt to blame GoDaddy for Plaintiffs' failure to timely renew," and that Plaintiffs failed to timely renew because Mr. Griffith is in prison. Dkt. 50 at 9. Again, this misstates the FAC and its exhibits, which provide that Plaintiffs did renew. *See supra*, Argument, § V.[8]

### D. The FAC Alleges that Plaintiffs Renewed the Domain Registration

GoDaddy has two remaining arguments against the contract claim. First, that GoDaddy had no contractual duty to automatically renew. *See* Dkt. 50, at 10. This is irrelevant as Plaintiffs allege that GoDaddy breached three different provisions of the 2021 Agreement (and the agreement attached to the FAC), including that GoDaddy did renew. *See supra*, Argument, § V.B.

Second GoDaddy argues that the FAC "is devoid of any allegations that Plaintiffs took any action whatsoever to renew the Domain prior to its expiration on July 26, 2022" and that "the first instance that Plaintiffs allege that anyone acting on their behalf even inquired about renewal was on August 3, 2022." Dkt. 50, at 10. This misses the mark because the FAC alleges that the Domain was renewed and because the proper inference is that the Domain was renewed. *See supra,* Argument, § V.

### E. The FAC Sufficiently Alleges Breach of the Covenant

"Every contract includes an implied covenant of good faith and fair dealing, and that due requires a contracting party not to impair the other party's rights flowing from the contract." *Leo India Films Ltd. v. GoDaddy.com LLC*, 2022 WL 836812, at *2 (D. Ariz. Mar. 21, 2022) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). That is what the implied covenant claim alleges—that GoDaddy thwarted Plaintiffs' ability to

---

[8] Because Plaintiffs' exhibits do not refute the allegations, the case that GoDaddy cites—*Molera v. City of Nogales*, 2020 WL 364200 (D. Ariz. Jan 22, 2020)—is irrelevant.

9

realize the benefit of the contract because GoDaddy failed or refused, improperly, Plaintiffs the right to renew the registration. *See* Dkt. 24, ¶¶ 47-50. Moreover, the covenant breach "flow[s] from" specific terms in the underlying contract because, as explained above, the 2021 Agreement states that GoDaddy will provide the registrant an opportunity to renew during the grace period. *See supra*, Argument, § V.B.

Against this backdrop, GoDaddy's arguments do not warrant dismissal.

GoDaddy first argues that the covenant claim fails because there is no valid contract. *See* Dkt. 50, at 11. As explained above, the two GoDaddy entities that have been sued are proper contract Defendants, and Plaintiffs will amend the complaint to add the additional GoDaddy entity. *See supra*, Argument, § V.B.

Second, GoDaddy says the "Domain not being automatically renewed" and Plaintiffs' own "failure to manually renew . . . prior to [the Domain's] expiration" cannot establish a breach of the covenant. *See* Dkt. 50, at 12. However, the FAC alleges that Plaintiffs were entitled to renew on July 31, 2022, when GoDaddy told them it was not too late to renew. *See supra*, Argument, § V. So, when the allegations are accepted and construed in Plaintiffs' favor the breach of covenant claim is sufficiently plead.

GoDaddy's single case citation changes nothing. Plaintiffs do not allege that GoDaddy "profited from [the] contract due to unforeseen events [and] must pay its windfall to" Plaintiffs. *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021). Rather, Plaintiffs allege that GoDaddy breached specific terms and violated Plaintiffs' rights flowing from those terms. *See SinglePoint Direct Solar LLC v. Curiel*, 2022 WL 331157, at *26 (D. Ariz. Feb. 3, 2022) (movants sufficiently state claim for breach of implied covenant by alleging that "SinglePoint, through its directors and agents, breached those contracts by failing to provide funding, and had no intention of performing under those contracts generally"); *Nationstar Mortg. LLC v. Magnum Fin. LLC*, 2019 WL 6606081, at *5 (Ariz. App. Dec. 5, 2019) ("A contracting party may not take any wrongful action to deprive the other party of the benefits of the contract.").

### F. The FAC Sufficiently Alleges Intentional Interference

In Arizona, "to establish a claim for tortious interference with a business relationship" Plaintiffs "must allege (1) the existence of valid business expectancy; (2) that [GoDaddy] had knowledge of the relationship or expectancy; (3) intentional interference that induced or caused a breach or termination of the relationship or expectancy; and (4) resultant damage." *InfoArmor Inc. v. Ballard*, 2022 WL 394735, at *4 (D. Ariz. Jan. 26, 2022).

GoDaddy does not dispute that the FAC alleges the first and fourth elements. *See* Dkt. 50, at 13-15. Nor could it. The FAC states that there are "[o]ver [two] million" users of Plaintiffs' services, Dkt. 24, ¶ 6, that "Plaintiffs allow the use of the [D]omain to its users in exchange for a yearly fee," *id*. ¶ 54, and that if Plaintiffs were to lose the Domain, the users "would find their use [of the Domain] utterly disrupted rendering them unable to use [the Domain] to facilitate cryptocurrency transactions," *id*. ¶ 29. The FAC further alleges that Plaintiffs informed GoDaddy via the letter sent on September 1, 2022, that loss of the Domain could harm up to two million users," and have a devastating effect on TNL's business prospects. *Id*., ¶ 31; *see also* Dkt. 24-6. These allegations are sufficient to meet the first and fourth elements. *See, e.g.*, *FLP, LLC v. Wolf*, 2018 WL 704327, at *3 (D. Ariz. Feb. 5, 2018) ("FLP has identified a specific group—Non-Dollar Stores—with which it has a history of repeated transactions that have resulted in FLP's expectancy of recurring sales."); *InfoArmor*, 2022 WL 394735, at *4.

The FAC also alleges that GoDaddy had knowledge of existing and potential future business relationships that Plaintiffs held with its users. GoDaddy knew this because Plaintiffs told them about this relationship in the September 1, 2022, letter. *See* Dkt. 24, ¶¶ 30-31; Dkt. 24-6. This is sufficient to meet the third element of tortious interference at the pleadings. *See Sunshine Media Grp., Inc. v. Goldberg*, 2010 WL 2899081, at *6 (D. Ariz. July 22, 2010) (allegation that defendant has "firsthand knowledge of [the relevant] business relationships" is sufficient to meet this element).

11

1    Thus, the Court must reject GoDaddy's argument that the FAC does not "allege
2    that [GoDaddy] had knowledge of Plaintiffs' purported business expectancy at the time
3    the Domain expired." Dkt. 50, at 13. The September 1, 2022, letter shows that GoDaddy
4    possessed the requisite knowledge. On September 1, 2022, the Domain had not yet been
5    returned to the registry—that was not supposed to happen until September 5, 2022,
6    (though of course GoDaddy reneged on this statement, too, and gave it to Dynadot to
7    auction on September 3). *See* Dkt. 24, ¶¶ 28-34. Moreover, the August 25, notice from
8    GoDaddy expresses that Plaintiffs still had an opportunity to renew until September 5,
9    2022. *See* Dkt. 24-5 (stating that that Domain will "be returned to the registry . . . *absent*
10   *a renewal by the current registrant*" (emphasis added)). It is thus false that the FAC "does
11   not allege" that GoDaddy "took any action to prevent Plaintiffs from renewing the
12   Domain." *See* Dkt. 50 at 14.[9]

13   GoDaddy then alleges that the FAC "fails to plausibly allege that Defendants took
14   any intentionally wrongful act to disrupt Plaintiffs' relationship with a third party." *Id*.
15   But as just explained, (1) GoDaddy's refusal to respond to the September 1, 2022, letter,
16   and (2) GoDaddy's provision of the Domain to Dynadot before September 5, 2022, both
17   constitute intentionally wrongful acts for purposes of this cause of action. *See* Dkt. 24, ¶¶
18   32-33*; see also InfoArmor*, 2022 WL 394735, at *4.[10]

19   GoDaddy then argues that the exhibits to the FAC show that Plaintiffs failed to
20   "timely renew" and contacted an "unwitting GoDaddy employee" to try to renew. Dkt.

---

[9] GoDaddy cites *Dube v. Litkins*, 167 P. 3d 93, 101 (Ariz. App. 2007), where the court stated that plaintiff failed to allege a conspiracy or common design necessary to allege tortious interference. Allegations of a conspiracy are not needed because Plaintiffs allege that GoDaddy knew that refusing to return the Domain to Plaintiffs would cause Plaintiffs and their customers commercial damage. *See* Dkt. 24-6.

[10] GoDaddy cites *Strojnik v. Gen. Ins. Co. of Am.*, 36 P.3d 1200 (Ariz. App. 2001). Dkt. 50, at 14. It is a summary judgment case. For that reason alone it has no application. In any case, the interference claim failed because plaintiff had no specific facts that could show that the defendant's conduct was wrongful and not simply an effort to "protect its own economic interest." *Stroknik*, 36 P.3d at 1205-08. Here GoDaddy points to nothing to suggest that it was only seeking to protect its own economic interests. And as noted, intentional conduct is alleged.

12

50, at 14. This misreads the FAC for purposes of a Rule 12 motion. *See Bain*, 891 F.3d at 1211; *Verrecchia*, 2017 WL 9486151, at *10.[11]

### G. The FAC Sufficiently Alleges Unfair Competition

"The common law doctrine of unfair competition is based on principles of equity" and its "general purpose [ ] is to prevent business conduct that is contrary to honest practice in industrial and commercial matters." *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC.*, 2006 WL 1441014, at *4 (D. Ariz. May 24, 2006) (citations omitted). For example, in *Pestube Sys, Inc.*, the court held that unfair competition allegations based on the defendant's misleading and false statements about whether a product was patented were sufficient to survive dismissal. *Id*.

Similarly, the FAC adequately alleges that GoDaddy took actions that are contrary to honest practice in industrial and commercial matters when GoDaddy (1) refused to respond to Plaintiffs' September 1, 2022, letter asking for help to ensure that the Domain would not be sold for auction, *see* Dkt 24, ¶¶ 30-32, and, (2) "put up the domain for sale by another, creating the false representation that [GoDaddy] had the right to sell the domain to another despite not having that right," *id*. ¶ 64; *see also id*. ¶¶ 33-37. This is sufficient to survive dismissal. *See Fullips LLC v. Liptiful LLC*, 2015 WL 11118119, at *3 (D. Ariz. Oct. 22, 2015) (Defendant "alleged sufficient facts to plausibly support a claim of unfair competition" by alleging that "Plaintiff advertised its product as the original lip enhancement tool, but that Defendant began selling her product first.").

GoDaddy first argues that an unfair competition claim must be based on conduct that is likely to cause public confusion. *See* Dkt. 50, at 15. However, the FAC alleges that GoDaddy's conduct caused confusion, as it alleges that GoDaddy falsely stated that the Domain had not been renewed, *see* Dkt. 24, ¶ 28; Dkt. 24-5, and that GoDaddy published a false, misleading, and confusing announcement that the Domain would be

---

[11] It is unclear why GoDaddy contends that *Praxair Servs., Inc. v. Rabb*, 2008 WL 11339091, at *1 (D. Ariz. May 21, 2008), is applicable because no allegations or facts are identified in the judicial opinion.

13

publicly available on September 5, 2022, when in reality GoDaddy allowed the Domain to be auctioned on September 3, 2022, *see id*. ¶¶ 33-35.[12] *See Pestube Sys., Inc., LLC.*, 2006 WL 1441014, at *4.

GoDaddy also argues that "Plaintiffs' own failures to take any steps to timely renew the Domain registration cause the registration to expire." Dkt. 50, at 16. Plaintiffs have already explained that this argument fails. *See supra*, Argument, § V.

### H. The FAC Sufficiently Alleges Conversion

"In Arizona, the tort of conversion requires an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other for the full value of the chattel." *Health Tech. Invs., Ltd. v. Itamar Med., Ltd.*, 2007 WL 9724273, at *4 (D. Ariz. May 29, 2007) (citations omitted). The FAC alleges that GoDaddy improperly converted the Domain when it—without justification—took the Domain away from Plaintiffs even though Plaintiffs had properly renewed the Domain, and provided it to Dynadot so that Dynadot could auction it to Manifold Finance. *See supra*, Argument, § V. This is sufficient to plead a claim of conversion. *See Aero Care Int'l L.L.C. v. Int'l Medevac Servs., Inc.*, 2008 WL 853623, at *4 (D. Ariz. Mar. 27, 2008) (sufficiently states a claim for conversion by alleging that "Midzor, acting on behalf of Aero, interfered with Medevac's ownership rights of insurance funds").

GoDaddy first complains that the conversion claim can only lie against Uniregistry and not also GoDaddy, Inc. and GoDaddy.com LLC. Dkt 50, at 16. This argument has already been addressed. *See supra*, Argument § V.B. The two GoDaddy Defendants are

---

[12] *TLX, Inc.* does not state that an unfair competition plaintiff must be a competitor; it states that "a plaintiff must either show that it was engaged in competitive business with the defendant *or that the defendant's actions were likely to produce public confusion*." *TLX, Inc. v. JetBlue Airways Corp.*, 2022 WL 973586, at *4 (D. Ariz. Mar. 31, 2022) (quotations omitted) (emphasis added). The FAC alleges the requisite confusion. Also, in *Cramton*, the counterclaimant "d[id] not include any explanation concerning why Cramton might be liable for unfair competition and d[id] not provide any evidence in support of any theory of liability for this claim." *Cramton v. Grabbagreen Franchising LLC*, 2019 WL 7048773, at *39 (D. Ariz. Dec. 23, 2019). That is not the case here.

14

affiliated with and control Uniregistry such that they are proper conversion defendants, and Plaintiffs will replead to add the GoDaddy entity doing business as Uniregistry. *Id*.

GoDaddy also complains that "Plaintiffs cannot plausibly allege that they were properly in possession of the Domain or entitled to immediate possession at the time of the alleged conversion" because the exhibits to the FAC show that the Domain had already expired and Plaintiffs failed to renew. Dkt. 50, at 16. Plaintiffs have already explained why this argument misreads and misconstrues the FAC. *See supra*, Argument § V.[13]

Finally, GoDaddy argues that a conversion claim cannot lie for website domains under Arizona law because "'an action for conversion ordinarily lies only for personal property that is tangible, or intangible property that is merged in, or identified with, some document.'" Dkt. 50, at 16 (citing *Miller v. Helen*, 104 P.3d 193, 203 (Ariz. App. 2005)). GoDaddy cites to *BioD, LLC* to make this argument, and *BioD, LLC* cites *Miller v. Helen* for the proposition that "Arizona does not recognize a claim for conversion of intangible property." *BioD, LLC v. Amino Tech., LLC*, 2014 WL 268644, at *11 (D. Ariz. Jan. 24, 2014) (citing *Miller*, 104 P.3d at 203). But *Miller* does not state that conversion claims cannot lie against website domains. Instead, *Miller* states that "Arizona has adopted the . . . definition of conversion . . . in the Restatement (Second) of Torts § 222A(1) (1965)." *Id.*, at 472. And the Second Restatement does not state whether or not website domains can be subject to conversion claims. *See* Restatement (Second) of Torts § 222A(1) (1965). Indeed, another treatise cited by *Miller*—American Jurisprudence, Second Edition—states that "in appropriate circumstances, intangible personal property can be converted." 18 Am. Jur. 2d Conversion § 7; *see also Miller*, 104 P.3d at 203 (quoting this section of the

---

[13] GoDaddy cites *Friedman* for the proposition that "[t]here must be an ownership or possessory interest in the chattel. Dkt. 50, at 16-17 (citing *Autoville, Inc.v. Friedman*, 510 P.2d 400, 403 (Ariz. App. 1973)). The FAC alleges that Plaintiffs have an ownership and a possessory interest in the Domain. *See supra*, Argument, § V. GoDaddy cite *Health Tech. Invs. Ltd.* for the same proposition—that the conversion plaintiff "must show that at the time of the conversion he was in possession of the property or was entitled to the immediate possession thereof." Dkt. 50, at 17 (citing *Health Tech Invs., Ltd. v. Itamar Med., Ltd.*, 2007 WL 9724273, at *4 (D. Ariz. May 29, 2007)). Again, this is alleged. *See supra*, Argument, § V.

15

American Jurisprudence treatise).  As the Arizona Supreme Court has not otherwise stated whether domains can be converted, the law on this question in Arizona is not settled.

In contrast, the Ninth Circuit recognizes that under California law "domain names are intangible personal property subject to a common law action for conversion[.]" *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143 (9th Cir. 2010); *see also Kremen v. Cohen*, 337 F.3d 1024, 1035 (9th Cir. 2003) ("Kremen's domain name is protected by California conversion law[.]").  And several other courts in California and outside the Ninth Circuit have also found that domain names are subject to conversion.  *See e.g.*, *Best Carpet Values, Inc. v. Google LLC*, 2021 WL 4355337, at *5 (N.D. Cal. Sept. 24, 2021) (collecting cases); *Cosm. Alchemy, LLC v. Herrel*, 2011 WL 13220153, at *3 (C.D. Cal. Sept. 29, 2011); *Salonclick LLC v. SuperEgo Mgmt. LLC*, 2017 WL 239379, at *4 (S.D.N.Y. Jan. 18, 2017) (collecting cases) ("The Court holds that Plaintiff has stated a claim for conversion of its domain name and social media accounts under New York law.").  Plaintiffs respectfully contend that the Court should adopt the same conclusion.

### I. The FAC is Not So Vague or Ambiguous to Violate Rule 12(e)

GoDaddy last argues that the FAC should be dismissed pursuant to Rule 12(e) because Plaintiffs "do not make discrete allegations against" GoDaddy, Inc. and GoDaddy.com LLC.  Dkt. 50, at 17-18.  Rule 12(e) requires a more definite statement where the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  Given that GoDaddy also made arguments to dismiss the FAC under Rule 12(b)(6), it is demonstrably false that GoDaddy could not "reasonably prepare a response" to the pleading.  *Id.*; *see also Robles v. City of Tolleson*, 2019 WL 1150963, at *1 n.1 (D. Ariz. Mar. 13, 2019) ("While Robles' Complaint may be scattered, the City's reasoned sixteen-page [Motion to Dismiss or, in the Alternative, for More Definite Statement] evidences its ability to 'reasonably prepare a response' and therefore precludes the grant of an Order for a more definite statement.").

### VI. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants GoDaddy, Inc. and GoDaddy.com LLC's Motion to Dismiss.

Dated:  December 26, 2022

CROWELL & MORING LLP

By:  /s/  Katie Lee

Justin D. Kingsolver (AZ Bar No. 035476)
Alexander Urbelis (*pro hac vice*)
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 624-2500
JKingsolver@crowell.com
AUrbelis@crowell.com

CROWELL & MORING LLP Warrington S. Parker, III (*pro hac vice*) Jacob Canter (*pro hac vice*)
Katie Lee (*pro hac vice*)
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
WParker@crowell.com
JCanter@crowell.com
KatLee@crowell.com