**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ENS Labs Ltd., *et al.*, | No. CV-22-01494-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| GoDaddy Incorporated, *et al.*, | |
| Defendants. | |

At issue are three fully briefed Motions. First, Defendant Manifold Finance, Inc. filed a Motion to Dismiss First Amended Complaint and to Vacate Preliminary Injunction for Lack of Personal Jurisdiction (Doc. 37), to which Plaintiffs ENS Labs, Ltd., f/k/a True Names, Ltd., and Virgil Griffith filed a Response (Doc. 44), and Manifold filed a Reply (Doc. 46). Second, Defendants GoDaddy Inc. and GoDaddy.com, LLC filed a Motion to Dismiss (Doc. 49) and Supplement (Doc. 70), to which Plaintiffs filed a Response (Doc. 58) and the GoDaddy entities filed a Reply (Doc. 62). Third, Plaintiffs filed a Motion to Enforce Preliminary Injunction (Doc. 65), to which Defendant Dynadot, LLC filed a Response (Doc. 73) joined by Manifold (Doc. 74), and Plaintiffs filed a Reply (Doc. 75). The Court resolves these Motions without oral argument. LRCiv 7.2(f).

**I.     BACKGROUND**

In the Amended Complaint (Doc. 24, Am. Compl.), the operative pleading, Plaintiffs allege Griffith, for and on behalf of True Names, entered into a 2018 Domain Name Registration Agreement with Uniregistry, now owned by GoDaddy, Inc., for the

domain name eth.link (the "Domain"), and Plaintiffs have owned the Domain since then. The Domain provides access to the Ethereum Name Service (ENS), which—similar to the domain name system itself—allows a cryptocurrency holder to give a name to a cryptocurrency address, facilitating the trade and exchange of cryptocurrency.

In August and September 2022, the GoDaddy entities allegedly declined to renew Plaintiffs' registration in the Domain, as the Agreement requires, and refused to assist Plaintiffs in renewing the Domain or by clarifying the Domain's renewal status. Instead, Plaintiffs allege that on September 3, 2022, the GoDaddy entities sold the Domain to Dynadot, another registrar that holds online auctions, which in turn sold the Domain to Manifold. As a result, Plaintiffs raise claims of breach of contract and breach of the covenant of good faith and fair dealing against the GoDaddy entities as well as claims of intentional interference with prospective economic advantage, unfair competition, and conversion against all Defendants.

On September 5, 2022, Plaintiffs sought a Temporary Restraining Order (TRO) without notice (Doc. 2), but the Court ordered Plaintiffs to serve the Complaint, Summons, and motion for injunctive relief on Defendants (Doc. 11). The Court held a hearing on the motion on September 9, 2022 (Doc. 18), and no Defendant appeared at the hearing even after having received notice and the warning that if they failed to file a response to Plaintiffs' motion or failed to appear at the hearing, the Court "will deem either failure to be Defendants' consent to the Motion being granted." (Doc. 11 at 3.) The Court construed Plaintiffs' motion as one for a preliminary injunction and granted Plaintiffs the relief they sought in the motion, including requiring Defendants to transfer ownership of the Domain back to Plaintiffs and enjoining Defendants from causing the Domain to expire, allowing the Domain to revert to the registry to be generally available for purchase by third parties, preventing or frustrating Plaintiffs' right to renew the Domain registration, and selling or transferring ownership interest in the Domain. (Doc. 19.)

In the Amended Complaint, Plaintiffs state actual transfer of ownership of the Domain to a third party was not completed, although the Domain is now under the registrar

services of Dynadot. Plaintiffs allege Defendants engaged in the alleged conduct knowing "that Plaintiffs were entitled to control [the Domain]" (Am. Compl. ¶¶ 75–77) and with "an intent to injure Plaintiffs and improve their own economic opportunities" (Am. Compl. ¶¶ 56, 58).

## II. Manifold's Motion to Dismiss for Lack of Personal Jurisdiction

In its Motion (Doc. 37), Manifold asks the Court to dismiss Plaintiffs' claims against it and to vacate the Preliminary Injunction as it pertains to Manifold because the Court lacks personal jurisdiction over Manifold.

### A.     Legal Standard

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction by challenging the plaintiff's allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties'

affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

**B.     General Jurisdiction**

The "paradigm forum" for the exercise of general jurisdiction over a corporate defendant "is one in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (internal citations omitted). And a corporation is fairly regarded as at home in "its place of

incorporation and principal place of business." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1024 (2021).[1]

Plaintiffs allege Manifold is "a Delaware company residing in Delaware."[2] (Am. Compl. ¶ 15.) Because Plaintiffs have not shown that Arizona is Manifold's place of incorporation or principal place of business or that this is an exceptional case, general jurisdiction over Manifold does not lie in this District.

### C. Specific Jurisdiction

Whether a court may exercise specific jurisdiction in a given case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff does so, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

---

[1] The Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014), left open "the possibility that in an exceptional case" a corporation might be "at home" elsewhere.

[2] In its Motion, Manifold contends its principal place of business is in California (Doc. 37 at 1), but a contention in a brief is neither an allegation nor evidence, so the Court must disregard it in this context. In any event, neither Delaware nor California is Arizona.

- 5 -

To meet the first element, the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful direction analysis is most commonly applied in cases alleging tortious conduct, as in this case. *Mavrix Photo, Inc.*, 647 F.3d at 1228.

Beginning with the first element, to determine whether a defendant's actions constitute purposeful direction, courts apply the "effects" test developed in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The effects test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284.

According to Plaintiffs' allegations, the GoDaddy entities—Arizona residents—breached a contract with Plaintiffs—Singapore and Pennsylvania residents—and conducted a sale of the Domain on September 3, 2022. (Am. Compl. ¶¶ 10–13, 33, 42.) Dynadot—a California resident—purchased the Domain and sold it to Manifold—a Delaware resident. (Am. Compl. ¶¶ 14–15, 33–34.) Plaintiffs state that Dynadot and Manifold knew that Plaintiffs were entitled to control the Domain and intended to injure Plaintiffs. (Am. Compl. ¶¶ 56, 58, 75–77.)

This sequence of events does not lead to the conclusion that, by purchasing the Domain from Dynadot, a California domain registrar, Manifold aimed its conduct at Arizona and caused harm it knew would likely be suffered in Arizona. The principal

alleged harm was suffered by Plaintiffs' business, and they themselves allege they are Singapore and Pennsylvania residents.

In their Response (Doc. 44), Plaintiffs posit that because the GoDaddy entities, the Domain's prior registrar(s), are located in Arizona, Manifold's purchase of the Domain was aimed at and caused harm in Arizona. It is unclear how. Plaintiffs do not allege the GoDaddy entities' business was harmed, other than perhaps by litigation Plaintiffs themselves initiated against the GoDaddy entities based on their alleged conduct. But no allegations or evidence point to conduct by Manifold aimed at Arizona, such that Manifold would reasonably expect to be haled into court in Arizona, and Plaintiffs thus fail to satisfy the *Calder* effects test.[3]

Plaintiffs also argue that because ENS has users of the Domain in Arizona, harm was suffered in and by Arizona. Although the Amended Complaint includes only a general allegation that "[o]ver 2 million ENS names have been registered worldwide," (Am. Compl. ¶ 6), Plaintiffs provide a Declaration in which Kori Whitaker, Executive Director of True Names, avers without further evidentiary support that ENS "has registrants who live in Arizona and conduct business and other transactions in Arizona in reliance on the [Domain]" (Doc. 45 ¶ 6). Even if the Court accepts this as sufficient evidence showing a connection between Plaintiffs and Arizona, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the *defendant*, the forum, and the litigation." *Walden*, 571 U.S. at 283 (emphasis added) (internal quotations omitted). That Plaintiffs allege Manifold knew Plaintiffs had users

---

[3] The Court agrees with Manifold (Doc. 46 at 2-7) that the cases cited by Plaintiffs in this respect are inapposite. In *Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 778 (N.D. Cal. 2007), the court set forth how to determine in which California county a domain name was located for the purpose of applying a California writ-of-execution statute; the case had nothing to do with personal jurisdiction and its associated inquiries. In *Jenkins v. Pooke*, 2009 WL 10692010, at *4-6 (N.D. Cal. July 13, 2009), also cited by Plaintiffs, the court determined a defendant's tortious conduct was aimed at California because the defendant had unlawfully accessed an e-mail account maintained by a California registry. Here, Manifold allegedly purchased the Domain from a California registrar that Manifold shows is maintained by a registry in Malta, not Arizona. Manifold also correctly points out Plaintiffs' conflation in the briefing of "registrar" and "registry"; according to the allegations, the GoDaddy entities were not registries of the Domain, but rather acted as the registrar. (Doc. 46 at 4-5.)

- 7 -

worldwide is too attenuated to show Manifold aimed its conduct at Arizona users, much less Arizona. Indeed, Plaintiffs have pointed to no allegations or evidence showing that Manifold aimed its conduct at Arizona.

Likewise, by alleging Manifold purchased the Domain from a California registrar with the intent to injure an individual in Pennsylvania and an entity in Singapore, Plaintiffs have not demonstrated the second requirement of specific jurisdiction. Plaintiffs' claims do not arise from Manifold's Arizona-related activities because those activities are non-existent.

In sum, Plaintiffs fail to meet their burden to show the Court has specific personal jurisdiction over Manifold. Plaintiffs ask to be able to conduct jurisdictional discovery (Doc. 44 at 11), but the Court agrees with Manifold (Doc. 46 at 8–9) that Plaintiffs do not adequately demonstrate what they anticipate such discovery will reveal, that is, what conduct Manifold may have aimed at Arizona and causing harm in Arizona. Plaintiffs thus fail to substantiate their request for jurisdictional discovery.

Of course, because the Court lacks personal jurisdiction over Manifold, the Court must vacate the Preliminary Injunction (Doc. 19) as it pertains to Manifold only. While Manifold did not appear on short notice to contest the entry of the Preliminary Injunction, Manifold contested the Court's personal jurisdiction over it in its first appearance in this case.

**III.      GoDaddy Inc. and GoDaddy.com, LLC's Motion to Dismiss**

The GoDaddy entities move to dismiss Plaintiffs' claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**A.      Legal Standard**

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for

failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.   Counts 1 and 2: Breach of Contract and the Covenant of Good Faith and Fair Dealing**

The GoDaddy entities first argue that Plaintiffs' breach of contract claim fails because Plaintiffs entered into a contract with Uniregistry, not the GoDaddy entities. (Doc. 50 at 7.) But Plaintiffs also allege that the GoDaddy entities acquired Uniregistry in 2020 (Am. Compl. ¶ 22), from which the Court can plausibly infer that the GoDaddy entities stepped into the shoes of Uniregistry for the purpose of its contractual and other obligations. Indeed, in their Motion, the GoDaddy entities assert that Uniregistry is a d/b/a of GoDaddy Online Services Cayman Islands. (Doc. 50 at 3.) The Amended Complaint

also includes allegations that GoDaddy, not Uniregistry, released a statement on August 25, 2022, that the Domain had expired and would be returned to the registry on September 5, 2022 "absent a renewal by the current registrant." (Am. Compl. ¶ 28 & Ex. E.)[4]

At this stage of the litigation, the Court accepts as true Plaintiffs' allegations; any argument regarding whether the evidence will support the allegations—such as evidence going to the scope of the GoDaddy entities' acquisition of Uniregistry or GoDaddy's conduct in acting on behalf of Uniregistry—is premature. Moreover, as Plaintiffs point out in their Response, if they named the wrong GoDaddy entity as Defendant, the proper course would generally not be a dismissal with prejudice of Plaintiffs' claims, as the GoDaddy entities request, but rather resolution of a motion to amend the complaint.[5] *See, e.g.*, *Bengiveno v. Pulte Home Corp.*, No. CV-07-01117-PHX-FJM, 2007 WL 3145100, at *2 (D. Ariz. Oct. 25, 2007).

The GoDaddy entities next contend the breach of contract claim fails because it is premised on Plaintiffs' renewal of the Domain registration, which the GoDaddy entities argue Plaintiffs did not consummate with Uniregistry. The GoDaddy entities' argument that Plaintiffs improperly contacted GoDaddy instead of Uniregistry for the renewal is not a basis to dismiss the Amended Complaint for the same reasons as the Court discussed above.

Plaintiffs' Domain registration was set to expire on July 26, 2022. As for what Plaintiffs knew about the Domain renewal in 2022, Uniregistry's Registration and Service Agreement provides that automatic renewal of a domain is the default setting provided as a courtesy to customers. (Am. Compl. ¶ 21 & Ex. A.)[6] Plaintiffs allege they received a notice

---

[4] Rule 10(c) provides that "a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[5] After arguing they are the wrong parties, the majority of the GoDaddy entities' brief consists of substantive challenges to Plaintiffs' claims, again as if the GoDaddy entities are proper Defendants. *See Chrome Hearts, LLC v. Alma Shop*, 2009 WL 10680869, at *6 (D. Guam Aug. 13, 2009).

[6] The GoDaddy entities request that the Court take judicial notice of Uniregistry's "current version" of its Registration and Service Agreement, available on Uniregistry's website (Doc. 52), which Plaintiffs do not oppose. Because Plaintiffs allege breach of the Agreement and it is thus central to the Amended Complaint, the Court will take judicial

on July 31, 2022, that the registration had expired but that it was "not too late" to renew the Domain. (Am. Compl. ¶ 25 & Ex. G.) The Amended Complaint also includes allegations that the WhoIs domain registration information Plaintiffs pulled after July 31, 2022, showed that the Domain was renewed through July 26, 2023 with GoDaddy Online Services Ltd. as the Registrar. (Am. Compl. ¶ 26 & Ex. C.) Plaintiffs contacted the GoDaddy entities on several occasions in August and September 2022 to clarify the Domain's registration status but received no response. (Am. Compl. ¶¶ 27, 30 & Exs. D, F.)

Plaintiffs' theory of breach of contract is that the current Agreement provides for a 30 day grace period in which to renew a domain, so the notice Plaintiffs received on July 31, 2022 that it was "not too late" to renew, and Plaintiffs' alleged renewal on or around August 3, 2022—as reflected by the WhoIs information—were consistent with the terms of the Agreement. (Doc. 58 at 7–8.) The GoDaddy entities breached the Agreement by offering the Domain for auction after Plaintiffs had allegedly renewed within the grace period. Likewise, Plaintiffs contend the GoDaddy entities breached the provisions of the Agreement that they will only "cancel, suspend, transfer or modify" a domain registration with a justification—which they did not have—and a third party may only purchase a domain at auction if the domain has not been renewed—which it allegedly had been. (Doc. 54-1 at 5; Doc. 58 at 8.) The Court agrees with the GoDaddy entities that no allegation in the Amended Complaint explicitly states that Plaintiffs renewed the Domain registration on or around August 3, 2022, but the Court can infer that from the WhoIs information, which is sufficient at this stage of the litigation. As a result, the Court must deny the GoDaddy entities' request to dismiss Count 1.

For similar reasons, the Court declines to dismiss Count 2 for breach of the covenant of good faith and fair dealing. Under Arizona law,[7] the covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters &*

---

notice of what the parties do not dispute is the current version of the Agreement. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 768 (D. Ariz. 2012).

[7] The parties both apply Arizona law to Plaintiffs' claims, which the Court accepts for the purpose of resolving the Motion to Dismiss.

- 11 -

*Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002), *as corrected* (Apr. 9, 2002). This implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party may "breach its duty of good faith without actually breaching an express covenant in the contract." *Id.* at 29.

Plaintiffs allege facts showing that the GoDaddy entities refused to renew the Domain registration for Plaintiffs and disregarded Plaintiffs' requests for clarification of the Domain's registration status and to renew the Domain as necessary. These allegations are sufficient to plausibly show the GoDaddy entities engaged in conduct preventing Plaintiffs from receiving the benefits and entitlements of the Domain's registration agreement.

### C. Count 3: Intentional Interference with Prospective Economic Advantage

The GoDaddy entities also seek dismissal of Plaintiffs' claim of intentional interference with prospective economic advantage. Arizona courts refer to this tort as intentional interference with business relationships, and its elements are as follows:

(1) The existence of valid contractual relationship or business expectancy;
(2) knowledge of the relationship or expectancy on the part of the interferer;
(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
(4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 637 P.2d 733, 739–40 (Ariz. 1985) (internal quotations and citations omitted); *see also Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041 (Ariz. 1985) (superseded by statute in other respects). The alleged interference must have been both intentional and improper. *Wagenseller*, 710 P.2d at 1041. The Arizona Supreme Court looks to the Restatement of Torts and has cited with approval section 766 of the Restatement (First) of Torts (1939),

which defines the tort as "one who, without privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby." *Antwerp Diamond Exch.*, 637 P.2d at 740 (quoting *Edwards v. Anaconda Co.*, 565 P.2d 190, 192 (Ariz. Ct. Ap. 1977)).

The GoDaddy entities argue Plaintiffs fail to allege sufficient facts regarding actions by the GoDaddy entities constituting intentional interference with Plaintiffs' business relationships, and specifically, that the GoDaddy entities prevented Plaintiffs from renewing the Domain registration. But as stated above, Plaintiffs adequately allege that the GoDaddy entities refused to renew the Domain registration and disregarded Plaintiffs' requests for help. It is just as plausible as not that these alleged acts, if true, were intentional.

The GoDaddy entities also argue that Plaintiffs do not adequately allege facts showing the GoDaddy entities had the requisite knowledge of Plaintiffs' business expectancy. In response, Plaintiffs point to allegations that they sent a letter to GoDaddy on September 1, 2022—before GoDaddy offered the Domain for auction—that the Domain "is critical to ENS, and over 2 million ENS addresses rely on [the Domain] for operation and routing." (Am. Compl. ¶ 31 & Ex. F.) As a result, "GoDaddy's decision to renege on its renewal of [the Domain] will result in disruption, fraud, and irreparable harm to the operations of ENS, and the many hundreds of thousands of wallets, websites, and applications that are currently relying on ENS." (Am. Compl. ¶ 31 & Ex. F.) Plaintiffs thus adequately allege that the GoDaddy entities had the requisite knowledge at least as of September 1, 2022, before they auctioned the Domain. For these reasons, the Court will deny the GoDaddy entities' request to dismiss Count 3.[8]

### D.     Count 4: Unfair Competition

The GoDaddy entities next challenge Plaintiffs' common law claim of unfair competition. The Court agrees with the GoDaddy entities that Arizona courts have only

---

[8] The Court finds no merit to the GoDaddy entities' argument (Doc. 50 at 16-17) that the Court should order a more definite statement of the Amended Complaint under Rule 12(e) because Plaintiffs' allegations against them are not sufficiently specific.

- 13 -

recognized such a tort in limited circumstances, including in conjunction with "trademark infringement, false advertising, 'palming off', and misappropriation." *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 963 (D. Ariz. 2015) (quoting *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)). The parties do not cite any legal authority that would convince the Court to extend the tort to circumstances such as those alleged by Plaintiffs here. Accordingly, the Court will dismiss Count 4 with prejudice. Moreover, the Court will dismiss Count 4 against the remaining non-moving party—Dynadot LLC—for the same reason. *See Silverton v. Dep't of Treasury of U.S.A.*, 644 F.2d 1341, 1345 (9th Cir. 1981).

### E. Count 5: Conversion

Likewise, the Court agrees with the GoDaddy entities that Arizona courts have not recognized the tort of conversion in circumstances such as those pled by Plaintiffs. In Arizona, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (citing Restatement (Second) of Torts § 222A(1) (1965)). But "[a]n action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document." *Id.* (citing 18 Am. Jur. 2d, Conversion § 7 (2004); Restatement (Second) of Torts § 242 cmt.a); *see also* Restatement (Second) of Torts § 242 cmt.e (stating that some courts have recognized there may be an action for conversion of an intangible right, but "[t]his does not accord very well with the traditional common law limitations of conversion," and courts "may prefer to regard the liability as one for an intentional interference with the right, which is not identical with conversion, but is similar to it in its nature and legal consequences").

Plaintiffs argue that none of these sources state whether website domains can be subject to conversion claims (Doc. 58 at 15), but Plaintiffs have alleged neither that the Domain was tangible nor that, as intangible property, it was merged in a document. Plaintiffs also ask the Court to look to states other than Arizona that have recognized a

common law action for conversion of a domain name, but the Court is applying Arizona law in this instance. Because Arizona has not recognized a common law action for conversion in these circumstances, the Court will dismiss Count 5 with prejudice against the GoDaddy entities as well as non-moving party Dynadot LLC. *See Silverton*, 644 F.2d at 1345.

### IV. Plaintiffs' Motion to Enforce Preliminary Injunction

Plaintiffs seek to transfer the Domain from Dynadot to a registrar of Plaintiffs' choice but report that Dynadot as registrar has locked the Domain, preventing Plaintiffs from transferring it. (Doc. 65 at 4.) The Court looks to the language of the Preliminary Injunction, which states, "Defendants shall immediately transfer ownership in the Domain back to Plaintiffs." (Doc. 19 at 4.) Plaintiffs point out, and Dynadot does not dispute, that within the bundle of rights included in ownership of a domain name is the right to transfer domain name registration between registrars. (Doc. 75 at 1–2.) As Plaintiffs also point out, although the rules of the Internet Corporation for Assigned Names and Numbers (ICANN) provide that a registrar can place a lock on a domain name when a proceeding under the Uniform Domain-Name Dispute Resolution Policy (UDRP) is taking place, no such proceeding is underway here.

Dynadot argues the lock "is necessary to preserve the status quo" (Doc. 73 at 10), but it neither substantiates that claim nor points to language in the Preliminary Injunction directing it to lock the Domain. Dynadot's main concern with Plaintiffs' transfer of the Domain to another registrar appears to be that "Plaintiffs can transfer the Domain outside this Court's jurisdiction, rendering the litigation moot." (Doc. 73 at 9.) But Plaintiffs—current owners of the Domain—will remain in the jurisdiction of the Court. Moreover, in their Reply, Plaintiffs agree not to move the Domain out of the United States or contest the Court's jurisdiction in entering an Order regarding the disposition of the Domain. (Doc. 75 at 4.)

For these reasons, the Court will grant Plaintiffs' request to enforce the Preliminary Injunction (Doc. 65) by ordering Dynadot to unlock the Domain so that Plaintiffs may

transfer it to another registrar. However, the Court in its discretion declines to award sanctions to Plaintiffs and against Dynadot on this issue.

**IT IS THEREFORE ORDERED** granting Defendant Manifold Finance, Inc.'s Motion to Dismiss First Amended Complaint and to Vacate Preliminary Injunction for Lack of Personal Jurisdiction (Doc. 37). Plaintiffs' claims against Manifold Finance, Inc. are dismissed for lack of personal jurisdiction, and the Preliminary Injunction (Doc. 19) is vacated as it pertains to Manifold Finance, Inc. only.

**IT IS FURTHER ORDERED** granting in part and denying in part Defendants GoDaddy Inc. and GoDaddy.com, LLC's Motion to Dismiss (Doc. 49). Counts 4 and 5 against all remaining parties are dismissed with prejudice, but the Motion to Dismiss is denied as to Counts 1, 2, and 3.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiffs' Motion to Enforce Preliminary Injunction (Doc. 65). Defendant Dynadot, LLC shall immediately unlock the Domain, eth.link, so that Plaintiffs may transfer it to another registrar. Plaintiffs may not transfer the Domain to a registrar outside the United States and agree not to contest the Court's jurisdiction in entering an Order regarding the disposition of the Domain. The Court declines to enter sanctions on this issue.

Dated this 24th day of July, 2023.

Honorable John J. Tuchi
United States District Judge